United States District Court
Southern District of Texas
**ENTERED**
May 01, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAX MARTINEZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00131 |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The undersigned recommends that the district court GRANT the motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) by defendants Chev'Quan Jerrell, Tracey Kelly, and Mario Gonzalez (Doc. No. 28).  The district court should permit Plaintiffs to amend their complaint with regard to their claims against Jerrell, Kelly, and Gonzalez, except for their bystander liability claims against Kelly and Gonzalez.  The district court should DENY Plaintiff's motion to strike the reply brief filed by Jerrell, Kelly, and Gonzalez (Doc. No. 39).[1]

### A. Proceedings.

This is a civil rights action brought under 42 U.S.C. § 1983.  The 32 plaintiffs, who are or were prison inmates, allege that their Eighth Amendment rights were violated because defendant Antonio Trevino's alleged reckless bus driving caused a crash while he was transporting them. *See* Doc. No. 19, pp. 3-8.  Defendants Jerrell, Kelly, and Gonzalez, according to Plaintiffs, are

---

[1] This case has been referred to the undersigned for pretrial case management and for recommendations on dispositive motions, pursuant to 28 U.S.C. § 636.  (Doc. No. 34.)

liable because they each allegedly had a reasonable opportunity to prevent the harm but intentionally chose not to act.  *Id*. at 9.  Defendant Gonzalez, Plaintiffs claim, also failed to prevent the harm to Plaintiffs as Trevino's supervisor.  *Id*. at 9-10.  Plaintiffs seek damages from each of these individual defendants, including punitive damages.  *Id*. at 10-11.

In a single motion, defendants Jerrell, Kelly, and Gonzalez, but not Trevino, request judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), each asserting (among other arguments) qualified immunity from suit.  (Doc. No. 28.)  Plaintiffs have responded.  (Doc. Nos. 35, 36.)[2]  Jerrell, Kelly, and Gonzalez filed a reply to that response (Doc. No. 37), but that response was untimely, so Plaintiffs have moved to strike it (Doc. No. 39).  Jerrell, Kelly, and Gonzalez oppose that motion to strike.  (Doc. No. 40.)

### B.  *Plaintiffs' allegations.*

Plaintiffs' operative complaint is the Third Amended Complaint, filed on September 14, 2023.  (Doc. No. 19.)  As will be discussed in greater detail below, and for purposes of this Rule 12(c) motion, the undersigned assumes that all of Plaintiffs' factual allegations are true, except where noted and explained otherwise.

#### 1.  *Factual allegations.*

Plaintiffs allege that defendant Trevino, an employee of the Texas Department of Criminal Justice (TDCJ), was driving a prison bus from Edinburg, Texas to San Antonio at 5:12 a.m. on October 1, 2021.  (Doc. No. 19, p. 2 ¶ 5; *id*. at 3-4 ¶ 9.)  Defendant Jerrell, also a TDCJ

---

[2]  Plaintiffs Max Martinez and Mark Perez are represented by the Aguirre Law Firm; all of the other plaintiffs are represented by the White & Carlson law firm.  *See* Doc. No. 19, pp. 11-12.  All of the plaintiffs joined together in filing the Third Amended Complaint.  *See id*.  In responding to the motion for judgment on the pleadings, plaintiffs Martinez and Perez filed a response through their Aguirre Firm counsel (Doc. No. 36), and the other plaintiffs separately responded through their White & Carlson counsel (Doc. No. 35).  The responses are essentially identical to one another.

employee, was on board, as were 44 prison inmates (including all of the plaintiffs in this case). *Id*. at 3 ¶ 6; *id*. at 3-4 ¶ 9.  Trevino and Jerrell had already been on duty for several hours by that point, having begun their work shifts in Beeville, Texas at 1:00 that morning.  *Id*. at 3 ¶ 9.  The undersigned takes judicial notice that Beeville is 168 miles from Edinburg.

Upon boarding the bus, plaintiff Martinez requested a seat belt, as did "many other" inmate passengers.  (Doc. No. 19, p. 4 ¶ 9.)  Trevino and Jerrell denied the seat belt requests "as had been the custom in the past."  *Id*.  Plaintiffs were instead shackled with handcuffs and leg irons, but no seat belts; they sat on plastic seats with no seat belt or safety harness "and with no possible way to brace or protect themselves in case of a crash."  *Id*.

Trevino drove the bus, while Jerrell was in the rear.  (Doc. No. 19, p. 4 ¶ 9.)  About 90 minutes into the trip, at about 6:33 a.m., Trevino made a stop.  This was an unauthorized stop, as Trevino had requested permission to stop but had been denied (Plaintiffs do not allege by whom).  *Id*. ¶ 10.  Trevino stopped because he was looking for his state-issued cell phone, which he had dropped while driving.  *Id*.  Trevino had been using his state-issued cell phone to "talk and communicate with others" while driving the bus; this was allegedly contrary to TDCJ policy. *Id*.  Trevino used his personal cell phone to call his state-issued cell phone, to assist himself in finding the latter phone, which was eventually found under the bus' accelerator pedal.  *Id*. During the unauthorized stop, Jerrell helped Trevino find Trevino's phone.  *Id.* at 7 ¶ 20.

Having found his phone, Trevino started driving again, but was behind schedule and needed to make up time, so he "began operating the bus in a dangerous and reckless way" despite "poor weather and driving conditions," which included "pouring rain."  (Doc. No. 19, pp. 4-5 ¶ 12.)  Trevino increased speed beyond the speed limit and recklessly "dart[ed] in and out of traffic."  *Id*. at 5 ¶ 12.

At 7:04 a.m., Trevino received a phone call on his state-issued phone from defendant Kelly.  At that time, Kelly was herself a passenger in a TDCJ vehicle elsewhere in the state, traveling from Plano to Gatesville.  (Doc. No. 19, p. 5 ¶ 13.)[3]  According to Plaintiffs, Kelly knew that Trevino was driving 44 inmates at the time of her call and that it was "dangerous, reckless, and against state and local ordinances" to operate the bus while operating a cell phone, but called and spoke with him anyway.  *Id*.  Many of the plaintiffs were "yelling and screaming for Trevino to slow down in fear of their life seeing that he was speeding while talking on his phone during poor weather and road conditions."  *Id*.  Trevino ignored the plaintiffs' pleas.  *Id*.

While Trevino was speeding and talking on the phone with Kelly, the bus hydroplaned and flipped onto its right side.  This caused the unbuckled plaintiffs to "fly out of their seats and crash into the metal wall and roof of the bus without being able to protect themselves."  (Doc. No. 19, p. 5 ¶ 14.)

Later investigation revealed that Trevino had been on the phone with Kelly during the crash.  (Doc. No. 19, p. 6 ¶ 15.)  Trevino had been driving the bus at 75 miles per hour immediately prior to the crash.  *Id*. at 5-6 ¶ 14.  Trevino, however, wrote in a post-crash statement that he had slowed down to 55 to 65 miles per hour because of the heavy rain and poor driving conditions.  *Id*. at 6 ¶ 14.  Trevino received a citation for "unsafe speed" from the Texas Department of Public Safety.  *Id*.

Investigation also revealed that Trevino had worked for ten consecutive days prior to beginning his October 1 shift, and that he had "worked a total of 76:30 hours of overtime" in the

---

[3]  The undersigned takes judicial notice that Gatesville (Kelly's destination that day) is 173 miles from San Antonio, and 401 miles from Edinburg.  Plano (Kelly's departure point that day) is 293 miles from San Antonio and 517 miles from Edinburg.

30 days prior to the crash.  (Doc. No. 19, p. 6 ¶ 15.)  And in a post-crash drug test, Trevino tested positive for cocaine.  *Id*. ¶ 14.

According to Plaintiffs, defendant Jerrell "had complete knowledge" at the time Trevino made his unauthorized stop that Trevino had been driving while using his cell phone.  (Doc. No. 19, p. 4 ¶ 11.)  Jerrell "knew" that Trevino would continue to drive the bus while using his phone, but Jerrell "did not require or even ask Defendant Trevino to put the cell phone away and did not ask to drive the bus so Trevino could make his phone calls."  *Id*.  Jerrell, like Trevino, ignored the passengers' pleas for Trevino to slow down.  *Id*. at 5 ¶ 13.

Defendant Kelly, according to Plaintiffs, "had full and complete knowledge that there was a substantial risk that Plaintiffs would be injured by her reckless actions and inactions, especially since Plaintiffs were unbelted and shackled to themselves completely incapable of protecting themselves."  (Doc. No. 19, p. 8 ¶ 21.)

Plaintiffs allege that Trevino's workload "would be in violation of every state and federal motor carrier regulation, rule, and law to operate a commercial vehicle."  (Doc. No. 19, p. 6 ¶ 15.)  Nevertheless, defendant Gonzalez, who allegedly was the supervisor of Trevino, Jerrell, and Kelly, allowed Trevino to drive the bus.  *Id*.  Plaintiffs allege that this "type of encouragement amounts to aiding and abetting and, within a reasonable probability, [led] to Defendant Trevino relying on stimulants such as cocaine in order to perform his job duties."  *Id*.  According to Plaintiffs, at the time of the crash, Gonzalez "was monitoring Defendant Trevino's real-time driving through TDCJ's ATT Workforce Manager software program and knew Defendant Trevino was operating the bus recklessly in real-time by speeding and swerving during heavy rain and poor road conditions."  *Id*. at 9 ¶ 27.  Gonzalez "was also monitoring Defendants

Trevino's and Kelly's state issued cell phones and knew they were talking to each other while Defendant Trevino was driving recklessly." *Id*.

### 2. *Plaintiffs' legal claims.*

#### a. *Eighth Amendment claims.*

Based on the foregoing alleged facts, Plaintiffs claim that defendants Jerrell, Kelly, and Gonzalez violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment (1) by acting with deliberate indifference to a substantial known risk of harm to Plaintiffs, (2) by failing to intervene, where intervention would have prevented the plaintiffs' injuries, and (3) creating a danger which would not have existed but for these defendants' actions, "ma[king] more likely the opportunity of harm" to Plaintiffs.  (Doc. No. 19, p. 8 ¶ 23.)

Specifically, according to Plaintiffs, Jerrell violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment by allowing Trevino to drive the bus recklessly while using his cell phone in the heavy rain and poor driving conditions.  (Doc. No. 19, p. 7 ¶ 20.)  Jerrell knew that Trevino was talking on his phone while driving, and even helped Trevino find the phone during the unauthorized stop after Trevino dropped it, so that Trevino "could continue to make calls and talk on the cell phone without regards to Plaintiffs' constitutional rights." *Id*.  Jerrell, according to Plaintiffs, "had full and complete knowledge that there was a substantial risk that Plaintiffs would be injured by these reckless actions and inactions, particularly since Plaintiffs were unbelted and shackled to themselves completely incapable of protecting themselves," yet "intentionally and knowingly chose to violate Plaintiffs' rights." *Id*.

Plaintiffs allege that Kelly violated their Eighth Amendment rights by speaking with Trevino by phone despite knowing that it was reckless for Trevino to operate the bus under those adverse conditions.  (Doc. No. 19, p. 7 ¶ 21.)  Kelly, say Plaintiffs, "had full and complete

6 / 37

knowledge that there was a substantial risk that Plaintiffs would be injured by these reckless actions and inactions, particularly since Plaintiffs were unbelted and shackled to themselves completely incapable of protecting themselves," yet "intentionally and knowingly chose to violate Plaintiffs' rights." *Id*. at 8 ¶ 21.

Plaintiffs allege further that Gonzalez also violated their Eighth Amendment rights because Gonzalez "knew Defendant Trevino was speeding while operating his cell phone, and high on cocaine with little to no rest in the prior 30 days, yet aided and abetted the reckless driving and transportation to occur…." (Doc. No. 19, p. 8 ¶ 22.)  Gonzalez, Plaintiffs allege, "had full and complete knowledge that there was a substantial risk that Plaintiffs would be injured by these reckless actions and inactions, particularly since Plaintiffs were unbelted and shackled to themselves completely incapable of protecting themselves," yet "intentionally and knowingly chose to violate Plaintiffs' rights." *Id*.

### b. *Bystander liability.*

Plaintiffs also allege that Jerrell, Kelly, and Gonzalez are each liable under § 1983 based on a theory of bystander liability.  This, they say, is because each was "in a unique position to prevent Defendant Trevino from operating the bus recklessly, wherein Defendants knew that Defendant Trevino was speeding in heavy rain while operating his cell phone with Defendant Kelly, while high on cocaine, and with little to no sleep having worked ten consecutive days at 78:30 hours of overtime during the preceding month." (Doc. No. 19, p. 9 ¶ 25.)  Plaintiffs allege that each of the defendants had full knowledge that there was a substantial risk that Plaintiffs would be injured, as Plaintiffs were "unbelted and shackled to themselves completely incapable of protecting themselves [from] Defendant Trevino's reckless and callous actions of operating the bus knowing of the danger to Plaintiffs." *Id*.  Plaintiffs assert: "Despite Defendants'

knowledge of the ongoing violations of Plaintiffs' constitutional rights complained of herein, and despite the opportunity to prevent the harm to Plaintiffs, Defendants intentionally chose not to act to the deprivation of Plaintiffs' constitutional rights." *Id.*

### c. Supervisor liability.

Plaintiffs additionally allege that defendant Gonzalez is liable under § 1983 based on a theory of supervisory liability. They assert that Gonzalez was monitoring Trevino's driving and Trevino's and Kelly's state-issued cell phones "and knew they were talking to each other while Defendant Trevino was driving recklessly." (Doc. No. 19, p. 9 ¶ 27.) Gonzalez, Plaintiffs allege, "disregarded a known or obvious consequence of his actions by allowing Trevino to drive while on his cell phone with Defendant Kelly, allowing Trevino to drive recklessly, allowing Trevino to drive while fatigued, and allowing Trevino to drive while high on cocaine." *Id.* at 10 ¶ 27.

### C. The parties' positions on the motion for judgment on the pleadings.

#### 1. Defendants' positions seeking judgment on the pleadings.

In their motion seeking judgment on the pleadings, Jerrell, Kelly, and Gonzalez all argue that Plaintiffs' claims do not rise to the level of deliberate indifference. Jerrell argues that claims that he merely "allowed" Trevino to drive the bus recklessly and failed to prevent Trevino's misconduct do not constitute deliberate indifference. (Doc. No. 28, pp. 5-6.) He contends that he cannot be held vicariously liable for Trevino's actions. *Id.* at 6. Jerrell also argues that his alleged acts of participating in the unauthorized stop and the search for Trevino's dropped phone and in ignoring Trevino's reckless driving do not amount to egregious intentional conduct. *Id.* "While Jerrell may have violated TDCJ policy by participating in an unauthorized stop and not providing Plaintiffs with seatbelts, such actions do not amount to a constitutional violation." *Id.*

According to Jerrell, Plaintiffs' allegations also fail to plead facts indicating that Jerrell had subjective knowledge that his own personal actions created a substantial risk of serious harm, or that he had subjective knowledge that Plaintiffs were exposed to a substantial risk of serious harm by Trevino's actions. *Id*. at 7.

Kelly argues that Plaintiffs fail to plausibly allege a deliberate indifference claim against her. (Doc. No. 28, pp. 8-9.) She argues that her action calling Trevino while he was driving the bus does not rise to the level of egregious intentional conduct. *Id*. at 8. She also contends that Plaintiffs fail to allege any nonconclusory facts showing that she had subjective knowledge of Trevino's condition or his driving. *Id*. Kelly argues that she cannot be held vicariously liable for another TDCJ employee's misconduct and that she was at most negligent. *Id*.

Gonzalez, meanwhile, argues that his alleged act of ordering Trevino to drive the bus does not rise to the level of egregious intentional conduct. (Doc. No. 28, p. 9.) He contends that Plaintiffs fail to allege that Gonzalez had subjective knowledge of a substantial risk of serious harm by ordering Trevino to transport Plaintiffs. *Id*. He asserts that Plaintiffs' allegations that Gonzalez knew that Trevino was unfit to drive and under the influence of cocaine are conclusory, and thus that Plaintiffs fail to plausibly allege that Gonzalez was subjectively aware of and disregarded an excessive risk to Plaintiffs' safety. *Id*. at 9-10.

Jerrell, Kelly, and Gonzalez all contend that Plaintiffs fail to assert viable bystander liability claims against them. (Doc. No. 28, pp. 10-11.) Kelly and Gonzalez argue that they cannot be held liable as bystanders because they were not physically present on the bus while Trevino was driving it, and thus "would not have had an opportunity to prevent the accident." *Id*. at 11. Jerrell, meanwhile, argues that Plaintiffs fail to allege that he had subjective

knowledge that Trevino's actions violated Plaintiffs' constitutional rights or that he intentionally failed to act.  *Id.*

Gonzalez argues that Plaintiffs' supervisory liability claim is insufficient.  Plaintiffs fail to allege that Gonzalez implemented any policy that violated their rights, Gonzalez says, or that Gonzalez was personally involved in any alleged deprivation of their rights.  (Doc. No. 28, pp. 11-12.)  Gonzalez further decries Plaintiffs' "conclusory" allegations that Gonzalez knew Trevino was unfit to drive the bus and that he was high on cocaine.  *Id.* at 12.

Jerrell, Kelly, and Gonzalez all invoke the doctrine of qualified immunity from suit. (Doc. No. 28, pp. 12-14.)  They argue that Plaintiff fails to state a viable deliberate indifference claim against them, or that the personal actions of any of them violated clearly established law. Kelly and Gonzalez argue further that they cannot be held liable as bystanders under clearly established law because they were not present on the bus, and Gonzalez contends that no clearly established law holds that a supervisor can be held liable for ordering a subordinate to transport inmates to a unit without subjective knowledge of an excessive risk of harm.  (Doc. No. 28, pp. 13-14.)

### 2. *Plaintiffs' positions opposing judgment on the pleadings.*

In response, Plaintiffs argue that they have sufficiently alleged Eighth Amendment deliberate indifference claims against Jerrell, Kelly, and Gonzalez.  First, they claim that "the Fifth Circuit has held that transporting inmates recklessly when inmates are not provided seatbelts rises to the level of deliberate indifference."  (Doc. No. 35, p. 6 (citing *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013).)[4]  Jerrell, Plaintiffs contend, violated Plaintiffs'

---

[4] *See also* Doc. No. 36 (identical response brief filed by plaintiffs Martinez and Perez).  Because the response briefs are essentially identical to each other, the undersigned does not further cite Martinez's and Perez's response here.

Eighth Amendment rights when he "failed to provide seat belts even after he knew Defendant Trevino was driving recklessly by darting in and out of traffic, while the inmates were shackled in leg irons and handcuffed." *Id.* at 7.  Jerrell's subjective knowledge of danger to Plaintiffs is also evidenced, Plaintiffs allege, by Jerrell's knowledge that Trevino "was talking on his cell phone and high on cocaine," and that Jerrell "even assisted Defendant Trevino to find the phone that Trevino had earlier dropped so Trevino could continue to talk on it." *Id.*  Jerrell, Plaintiffs argue, therefore had a "sufficiently culpable state of mind." *Id.* (internal quotation marks omitted).  Jerrell, they say, "encouraged Trevino to violate TDCJ policy and put the lives of Plaintiffs at risk by assisting him in an unauthorized stop to find his personal phone so Trevino can continue to use it while speeding in the rain," and "allowed Trevino to operate the bus recklessly," and "ignored Plaintiffs' concerns regarding Trevino's speeding." *Id.* at 9.

Plaintiffs argue that they have sufficiently pled a deliberate indifference claim against Kelly as well.  According to Plaintiffs, their allegation that Kelly's act of "continuing to speak on the cell phone with Defendant Trevino and knowingly and intentionally distract[ing] him while he was speeding in the heavy rain with unbuckled inmates who were shackled to themselves" evidences Kelly's "sufficiently culpable state of mind." (Doc. No. 35, pp. 7-8) (internal quotation marks omitted).  Plaintiffs also argue that Kelly knew that speaking to Trevino while he was driving the bus was reckless, and thus that she aided and abetted Trevino's actions. *Id.* at 8.  Kelly, Plaintiffs argue, knew Trevino was driving in heavy rain and poor driving conditions and "essentially prevent[ed] Trevino from focusing on his one task – to safely drive the Plaintiffs to San Antonio, Texas." *Id.* at 9.

With regard to Gonzalez, Plaintiffs defend their indifference allegation by arguing that Gonzalez exhibited negligence that is "equal to deliberate indifference which was the proximate

cause by allowing Defendant Trevino to speed while operating his cell phone, and high on cocaine with little to no rest [during] the prior 30 days, and allowed the reckless driving and transportation to occur knowing of the dangers" without regard to Plaintiffs' constitutional rights.  (Doc. No. 35, pp. 8-9.)

Plaintiffs also argue that they have stated viable bystander liability claims against Jerrell, Kelly, and Gonzalez.  They argue that Jerrell was present on the bus and that, combined with the other pleaded facts, the elements of a bystander liability claim are met.  (Doc. No. 35, p. 10.) Kelly, say Plaintiffs, was constructively present on the bus because she was talking with Trevino by phone when the accident occurred and because her conversation distracted him.  *Id*.  Plaintiffs do not specifically respond to Gonzalez's bystander liability argument.  *See id*.

With regard to their supervisory liability claim against Gonzalez, Plaintiffs argue that Gonzalez was personally involved in the violation Plaintiffs' rights by allowing Trevino's operation of the bus despite knowledge of Trevino's recklessness (Gonzalez was allegedly aware because he was remotely monitoring Trevino's operation of the bus).  (Doc. No. 35, pp. 11-12.) Gonzalez's acquiescence, combined with his alleged knowledge that Trevino was under the influence of cocaine and that Trevino was fatigued, constituted deliberate indifference.  *Id*.

Plaintiffs resist the qualified immunity claims as well.  They argue that they are required to prove only that Jerrell, Kelly, and Gonzalez caused injury to Plaintiffs that was sufficiently serious while having a culpable state of mind.  (Doc. No. 35, pp. 12-13) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 835 (1994)).

Finally, Plaintiffs ask for leave to amend their complaint should the Court find that judgment on the pleadings is appropriate.  (Doc. No. 35, pp. 13-14.)

### D. *The defendants' reply brief, and the motion to strike.*

Plaintiffs' response to the Rule 12(c) motion was filed on March 27, 2024.  Fourteen days later, on April 10, Jerrell, Kelly, and Gonzalez together filed a reply to Plaintiff's response. (Doc. No. 37.)  In that reply, the defendants dispute Plaintiffs' reliance on *Rogers v. Boatright*, arguing that *Rogers* stands only for the proposition that a driver (not others) could exhibit deliberate indifference in the manner by which he transported inmates.  *Id*. at 2-3.  The defendants further argue that Plaintiffs fail to allege how Jerrell (allegedly a passenger in the back of the bus, although this is not alleged anywhere in Plaintiffs' complaint) could have prevented Trevino from violating Plaintiffs' rights or that Jerrell had subjective knowledge of a constitutional violation.  *Id*. at 3.  Kelly and Gonzalez argue that there is no authority holding that a "meeting of the minds" is sufficient to satisfy the physical presence requirement for a bystander liability claim.  *Id*. at 4.  They also argue that Plaintiffs fail to allege that Gonzalez was personally aware of any history of driving problems on Trevino's part but nonetheless ignored them.  *Id*.  And all of the defendants reiterate their argument that their conduct did not violate clearly established law.  *Id*. at 4-5.  Finally, the defendants assert that leave to amend should be denied because amendment would be futile.  *Id*. at 5-6.

Plaintiffs have moved to strike the defendants' reply as untimely.  Local Rule 7.4(E), they claim, permits a reply within seven days after a response is filed to an opposed motion. (Doc. No. 39, p. 2.)  The reply here was filed a week late, 14 days after Plaintiffs' response.  *See* Doc. No. 37.)  For their part, defendants Jerrell, Kelly, and Gonzalez ask the Court to exercise its discretion not to strike the reply.  Counsel for these defendants states that the lateness "was not willful, but rather due to an administrative oversight."  (Doc. No. 40, p. 2.)  Counsel argues that

there is no demonstrable prejudice to Plaintiffs from the lateness, and apologizes to the Court for any inconvenience. *Id*. at 2-3.

### E. Law.

#### 1. Rule 12(c).

Defendants' motion is brought under Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. Rule 12(c) motions are designed "to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 at 509-10 (1990)). The standard for assessing such motions "'is the same as a Rule 12(b)(6) motion to dismiss.'" *Summers v. Hinds Cnty., Miss.*, 508 F. Supp. 3d 124, 129 (S.D. Miss. 2020) (quoting *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)). Permissible matters to consider include the facts set forth in the complaint, any documents attached to the complaint, and matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Sylvester v. Nilsson*, Civ. No. H-23-4085, 2024 WL 1144259, at *5 (S.D. Tex. Mar. 15, 2024) (Rosenthal, J.) (citing *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019)).

A reviewing court is to accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). But as with a Rule 12(b)(6) motion, legal conclusions are not entitled to such acceptance, nor are threadbare recitals of elements of a cause of action supported by mere conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, conclusory allegations and

14 / 37

unwarranted deductions of fact are not accepted as true: Plaintiffs must plead "'specific facts, not mere conclusory allegations' to state a claim for relief that is facially plausible." *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).  And legal conclusions masquerading as factual conclusions likewise will not suffice to prevent the granting of a motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993).

As applied here, Plaintiffs must plead "'enough facts to state a claim to relief that is plausible on its face.'" *Summers*, 508 F. Supp. 3d at 129-30 (quoting *Twombly*, 550 U.S. at 570)).  As *Twombly* clarified, and as *Summers* reiterated, factual allegations "'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Summers*, 508 F. Supp. 3d at 130 (quoting *Twombly*, 550 U.S. at 555).

### 2. 42 U.S.C. § 1983.

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him or her of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

15 / 37

### 3. *Eighth Amendment.*

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  The Eighth Amendment's prohibition is made applicable to the states by the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962).

Prison inmates have an Eighth Amendment right to be protected from harm.  *See Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013).  Prison officials must take reasonable measures to guarantee the safety of inmates.  *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  A viable Eighth Amendment claim requires a prisoner to plausibly allege that prison officials acted with deliberate indifference to the prisoner's safety.  *See Nixon v. Neal*, Civ. No. 20-2934, 2021 WL 2688950, at *8 (E.D. La. June 7, 2021), *adopted*, 2021 WL 2680163 (E.D. La. June 30, 2021).  A prison official acts with deliberate indifference if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized . . . that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"  *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001)); *see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even gross negligence is not enough: the officials must have had actual knowledge of the substantial risk.").

Thus, Plaintiffs' claim of each defendant's liability must plausibly allege nonconclusory facts indicating either that the relevant defendant personally participated in the violation of Plaintiffs' rights or that the defendant had subjective knowledge that Plaintiffs faced a substantial risk of harm to their health and safety and then disregarded that risk. *See Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir. 2021); *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3 (E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*, 511 U.S. at 840-41, and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (plaintiff must plausibly allege that each defendant was "aware of an excessive risk to the plaintiff's health or safety, and yet consciously disregarded the risk.")). Plaintiffs must allege that the relevant defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendant also actually drew that inference. *See Domino*, 239 F.3d at 755.

A defendant's subjective knowledge could be plausibly alleged in a number of ways, including inference from circumstantial evidence of which the defendant is aware, and under exceptional circumstances a defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk, if that official is aware of the facts from which that inference could be drawn. *See Domino*, 239 F.3d at 755; *Farmer*, 511 U.S. at 842; *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). But the failure to alleviate a significant risk that an official should have perceived, but did not, does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

### 4. Bystander liability.

In this circuit, a prison official may violate the Eighth Amendment by failing to take reasonable measures to protect an inmate from another officer's unconstitutional actions under a theory of bystander liability. *See Martinez v. Bowers*, Civ. No. H-23-768, 2024 WL 1703086, at

*5 (S.D. Tex. Apr. 19, 2024) (Rosenthal, J.).  A claim under § 1983 for such a failure to intervene can lie where an officer (1) knows that a fellow officer is violating an individual's constitutional rights, (2) is present at the scene of the constitutional violation, (3) has a reasonable opportunity to prevent the harm, but (4) chooses not to act.  *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).  "However, liability will not attach where an officer is not present at the scene of a constitutional violation."  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).  More than mere presence is required in the vicinity of the violation, however: "we also consider whether an officer acquiesced in the alleged constitutional violation."  *Joseph*, 981 F.3d at 323 (quoting *Whitley*, 726 F.3d at 647).  When the evidence shows that a defendant was generally aware of the constitutional violation "but did not actively acquiesce in the violation, the evidence is insufficient to establish bystander liability."  *Martinez*, 2024 WL 1703086, at *6 (citing *Joseph*, 981 F.3d at 343; *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (per curiam)).

### 5. *Supervisor liability.*

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).  There is no vicarious or *respondeat superior* liability of supervisors under § 1983.  *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).  "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676.  Thus, a supervisory official may be held liable only if "(1) he affirmatively participates in

the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  Supervisory liability without overt personal participation in the offensive act thus can lie only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotations omitted).  "A policy is normally an official statement, ordinance, or regulation, but in certain circumstances a persistent, widespread practice that is so commonplace as to constitute a custom can also be treated as policy." *McNeil v. Caruso*, No. 17-01688, 2019 WL 1435831, at *2 (M.D. La. Mar. 28, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

To the extent claims against supervisory officials are based on a failure to train or supervise, "the Fifth Circuit has held that a plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate officials; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Brown v. Gonzales*, No. 2:23-CV-068-Z-BR, 2024 WL 780452, at *4 (N.D. Tex. Jan. 26, 2024), *adopted*, 2024 WL 779240 (N.D. Tex. Feb. 26, 2024) (citing *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008)); *see also Porter*, 659 F.3d at 446 (explaining that a plaintiff seeking to establish "supervisory liability for constitutional violations committed by subordinate employees … must show that the supervisor acted, or failed to act, with *deliberate indifference*, to violations of others' constitutional rights committed by their subordinates") (cleaned up) (emphasis in original).  Deliberate indifference in this context, therefore, requires "a conscious choice to endanger constitutional rights" and the proof of deliberate indifference requires more than a single instance of the lack of training or supervision

causing a violation of constitutional rights." *Mesa*, 543 F.3d at 274.  A claim of failure to train or supervise "presupposes an underlying constitutional violation." *Brown*, 2024 WL 780452, at *5 (citing *Perryman v. Bloomfield*, 69 F. App'x 659 (5th Cir. 2003)).

### 6. *Qualified immunity.*

"This court applies a two-step analysis to determine whether a government official is entitled qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011)); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The basis for the qualified immunity doctrine is "the idea that officials who perform their duties reasonably should not fear the harassment, distraction, and liability of a civil lawsuit for simply doing their job, while those who exercise their power irresponsibly should be held accountable." *Broussard v. Jefferson Cnty.*, No. 1:15-CV-00309, 2016 WL 11190107, at *3 (E.D. Tex. Apr. 20, 2016), *adopted*, 2016 WL 3063826 (E.D. Tex. May 31, 2016) (citing *Pearson*, 555 U.S. at 231).  Qualified immunity is a generous shield: it provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The doctrine "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Thus, a government official can be held personally liable for monetary damages only if the official's particular conduct "violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *al-Kidd*, 563 U.S. at 735).  Courts have "discretion to decide

which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735 (citing *Pearson*, 555 U.S. at 236).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up)).  A binding court case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Malley*, 475 U.S. at 341.  "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citing *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004).  Absent controlling authority, there must be a "robust 'consensus of cases of persuasive authority.'" *al-Kidd*, 563 U.S. at 741 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).  And the controlling decision or consensus must be with regard to the official's "*particular* conduct," described with specificity. *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166 (5th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)).  The inquiry is judged against the backdrop of the law at the time of the conduct. *Morgan v. Chapman*, No. 6:17-CV-00004, 2022 WL 4367057, at *8 (S.D. Tex. Sept. 20, 2022) (Tipton, J.) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

In the context of a bystander liability claim, a plaintiff must show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing that the acting officer was violating a clearly established constitutional right. *See Anderson v. Harris*

*Cnty., Tex.*, No. 4:21-CV-03730, 2024 WL 1526730, at *10 (S.D. Tex. Mar. 10, 2024) (Bennett, J.); *Howard v. City of Houston, Tex.*, Civ. No. H-21-1179, 2022 WL 479940, at *12 (S.D. Tex. Feb. 16, 2022) (Miller, J.) (citing *Joseph*, 981 F.3d at 345)). Plaintiffs here must show that "any reasonable officer would have known that the Constitution required them to intervene." *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 301 (5th Cir. 2023) (quoting *Joseph*, 981 F.3d at 345) (cleaned up).[5]

### F. *Discussion.*

#### 1. *Defendant Jerrell.*

Plaintiffs' allegations regarding Jerrell center on their claim that he failed to stop Trevino from driving the bus recklessly. Jerrell allegedly allowed Trevino to drive the bus recklessly, by failing to tell Trevino to put his cell phone away and by failing to drive the bus himself so that Trevino could continue to talk on the phone. *See* Doc. No. 19, p. 4 ¶ 11. In addition, Plaintiffs also allege two specific acts by Jerrell that they contend violated their rights: that Jerrell denied the plaintiffs' request for seat belts at the outset of the trip (Doc. No. 19, p. 4 ¶ 9) and that Jerrell helped Trevino find Trevino's phone during the unauthorized stop (*id.* at 7 ¶ 20). The undersigned addresses Jerrell's alleged overt actions first.

Jerrell's alleged denial of the plaintiffs' request for seat belts at the beginning of the trip does not present an Eighth Amendment violation. The failure to provide seatbelts to inmates riding in prison vehicles, standing alone, does not violate an inmate's Eighth Amendment rights. *See Rogers*, 709 F.3d at 408-09. Because there was no constitutional requirement that the bus be

---

[5]  Plaintiffs claim that they can overcome qualified immunity by proving only that the defendants violated their constitutional rights. (Doc. No. 35, pp. 12-13.) To the contrary, Plaintiffs must demonstrate not only that a constitutional violation occurred but also that the violated right was clearly established in law at the time of the alleged violation. *See Guerra*, 82 F.4th at 285.

equipped with seat belts at all, any denial or thwarting of seat belt use, by itself, likewise does not present a constitutional violation. *Cf. Jimenez v. Travis Cnty. Sheriff's Dept.*, 856 F. App'x 534, 535 (5th Cir. 2021) ("there is no federally protected right to safety restraints in prison transport vehicles"); *Burns v. Davis*, No. 4:15-CV-3280, 2017 WL 4250529, at *3 (S.D. Tex. Sept. 22, 2017) (Bennett, J.).[6]  Additionally, Jerrell's alleged denial of the requests for seat belts occurred, according to Plaintiffs, at the outset of the journey.  Plaintiffs make no allegation that Jerrell had any reason at that time to believe that Trevino would later drive the bus recklessly, nor do they allege that they requested seat belts at any time after Jerrell's initial denial.  The district court should conclude that Jerrell is entitled to judgment on the pleadings on Plaintiffs' claim that he exhibited deliberate indifference by denying Plaintiff's request for seat belts.  Because Jerrell is entitled to judgment on the pleadings, he is also entitled to qualified immunity on this claim, because Plaintiffs have failed to plausibly allege a constitutional violation. *See Guerra*, 82 F.4th at 285.

Likewise, Plaintiffs' claim that Jerrell exhibited deliberate indifference by helping Trevino find his dropped cell phone fails to reach a sufficient level of plausibility.  The unauthorized stop and Trevino's cell phone use might have been a violation of TDCJ policy, but Plaintiffs offer no facts indicating that Jerrell's action, itself, of helping Trevino find the phone constituted deliberate indifference.  Plaintiffs do not allege that Trevino drove recklessly prior to the unauthorized stop: they claim that Trevino stopped the bus because he had dropped his

---

[6]  Plaintiffs contend that "the Fifth Circuit has held that transporting inmates recklessly when the inmates are not provided seatbelts rises to the level of deliberate indifference."  (Doc. No. 35, p. 6) (citing *Rogers*, 709 F.3d at 409).  Plaintiffs overstate the holding in *Rogers*.  *Rogers* found, at the screening stage, that the plaintiff had a nonfrivolous deliberate indifference argument with regard to the prison van driver in that case, where the plaintiff plausibly alleged that the driver, who had allegedly driven recklessly, was also subjectively aware of the risk to the plaintiff because the driver had told another officer that other inmates had been injured in a similar incident the previous week and that such incidents "happen[] all the time." 703 F.3d at 409.  *Rogers* does not hold that reckless transportation of inmates without seat belts constitutes deliberate indifference.

phone, and that he drove recklessly after the stop in an effort to get back on schedule.  *See* Doc. No. 19, p. 4 ¶ 10; *id.* at 4-5 ¶¶ 12 (after the unauthorized stop, Trevino "began operating the bus in a dangerous and reckless way").  Plaintiffs fail to plausibly allege that Jerrell acted with deliberate indifference to their safety by helping Trevino find the phone during the unauthorized stop, where there is no allegation that Trevino's driving had been dangerous prior to that stop. Because Jerrell is entitled to judgment on the pleadings, he is also entitled to qualified immunity on this claim, because Plaintiffs have failed to plausibly allege a constitutional violation.  *See Guerra*, 82 F.4th at 285.

What remains is Plaintiffs' claim that Jerrell failed to stop Trevino from driving the bus recklessly after the unauthorized stop.  Plaintiffs do not allege that Jerrell directed Trevino to drive recklessly, so their deliberate indifference claim is reducible to an allegation that Jerrell, knowing (1) that the prisoners were shackled and were not restrained with seat belts and (2) that Trevino had his cell phone and would likely be using it while driving, acted with deliberate indifference to the inmates' safety by allowing Trevino to drive the bus recklessly in the face of the prisoners' shouted requests for Trevino to slow down and stop talking on the cell phone.

Ultimately, Plaintiff's deliberate indifference claim against Jerrell merges into their bystander liability claim: they are alleging that Jerrell violated their Eighth Amendment rights by not intervening to stop Trevino from driving recklessly.  *Compare* Doc. No. 19, p. 4 ¶ 11 (despite knowing that Trevino had been driving the bus while using his phone, Jerrell "did not require or even ask" Trevino to put the phone away or to allow Jerrell to drive the bus himself) *with id.* at 7 ¶ 20 (Jerrell "allowed Defendant Trevino to drive the bus recklessly" while Trevino was using his cell phone in the heavy rain and poor driving conditions).  Plaintiffs cannot base their claim against Jerrell solely on Trevino's conduct, for there is no vicarious liability under §

24 / 37

1983.  *See Thompkins*, 828 F.2d at 303-04; *Bailey v. Alviar*, No. 9:15cv164, 2018 WL 1701992, at *5 (E.D. Tex. Feb. 15, 2018) (no vicarious liability of shotgun guard on prison bus where bus driver allegedly caused crash).

To survive a Rule 12(c) motion on their bystander liability claim, Plaintiffs needed to plausibly allege that Jerrell (1) knew that Trevino was violating the inmates' constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm, but (4) chose not to act.  *See Joseph*, 981 F.3d at 343.  Plaintiffs were also required to plausibly allege that Jerrell "acquiesced in the alleged constitutional violation."  *Id*. at 323; *Whitley*, 726 F.3d at 647.

Here, Plaintiffs' bystander liability claim falls short of plausibility.  Plaintiffs do sufficiently allege that Jerrell was aware that Trevino was driving recklessly: Jerrell was present aboard the bus and was experiencing the effects of Trevino's driving, even though Jerrell was stationed at the rear of the bus.  And Jerrell had also helped Trevino find his dropped cell phone during the unauthorized stop; this arguably supports a conclusion that Jerrell acquiesced in Trevino's use of the phone while driving.  But a viable bystander liability claim requires more. It is not enough for Plaintiffs to allege that Jerrell knew of Trevino's conduct – that Trevino was driving recklessly, or even that Jerrell knew that Trevino was driving recklessly while using his cell phone.  For viability, Plaintiffs were required to allege with particularity that Jerrell knew Trevino's actions were violating Plaintiffs' constitutional rights.  *Cf. Buehler v. City of Austin*, No. 1:17-CV-724, 2018 WL 4225046, at *7 (W.D. Tex. Sept. 5, 2018) (dismissing bystander liability claim where plaintiff failed to plead with particularity that defendant officers, who were present at and observed arrest, knew that excessive force was being used or that the officers had a reasonable opportunity to stop it).  This is because the gravamen of a bystander liability claim

is that a law enforcement officer chooses not to act in the presence of a constitutional violation being committed by another officer. *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Plaintiffs fail to do that here: they do not allege any facts indicating that Jerrell knew Trevino's conduct was violating the Plaintiffs' constitutional rights. Without a plausible allegation that Jerrell knew that a constitutional violation was occurring (as opposed to merely knowing that the conduct itself was occurring), Plaintiffs fail to plausibly allege the first or fourth elements of a bystander liability claim. They also fail to plausibly allege that Jerrell's failure to intervene was the product of a deliberate choice made with knowledge of a constitutional violation.

Even if Plaintiffs' bystander liability claim did not suffer from these infirmities, Jerrell would nonetheless be entitled to dismissal of the claim based on qualified immunity, because Plaintiffs fail to show that Jerrell had a clearly established constitutional duty to intervene. *See Joseph*, 981 F.3d at 345; *Anderson*, 2024 WL 1526730, at *10.[7] Fifth Circuit case law on bystander liability uniformly conditions such liability on a defendant's knowledge that a constitutional violation is occurring. No Fifth Circuit case appears to hold that such liability is possible where a defendant is aware of conduct but is not plausibly alleged to appreciate its constitutional significance. Among district court decisions in this circuit, *Buehler* indicates the opposite – that a lack of knowledge of a constitutional violation merits dismissal of a bystander liability claim. *See Buehler*, 2018 WL 4225046, at *7.

One district court case suggests that a defendant's knowledge of a constitutional violation can be inferred from other plausible factual allegations. In *Daniels v. Middleton*, Civ. No. 4:23cv6, 2024 WL 898916 (E.D. Tex. Jan. 23, 2024), *adopted*, 2024 WL 897593 (E.D. Tex.

---

[7] This grants Plaintiffs the assumption, solely for this analysis, that Trevino was violating a clearly established constitutional right by his own conduct. *See id.*

Mar. 1, 2024), the court considered a bystander liability claim against a police officer who restrained the plaintiff while another officer put the plaintiff into a chokehold and repeatedly punched him in the face.  There, the court held that the restraining officer knew that the punching officer was using excessive force, and denied the restraining officer's motion to dismiss the bystander liability claim.  *Id*. at *4.  Even if *Daniels* could be interpreted to mean that a defendant need not have subjective knowledge of a constitutional violation in order for a bystander liability claim to proceed, that decision is not controlling on any other court, and it is a single decision – it does not provide the "robust consensus of cases of persuasive authority" by which all reasonable officers would know that their failure to act would violate the Constitution. *See al-Kidd*, 563 U.S. at 741.  Because Plaintiffs fail to show that every officer in Jerrell's position would know that he or she had a constitutional duty to intervene in the face of Trevino's conduct, Jerrell is entitled to qualified immunity and to judgment on the pleadings under Rule 12(c).

### 2. *Defendant Kelly.*

Plaintiffs allege that Kelly violated their Eighth Amendment rights by calling Trevino while he was driving and talking with him at the time of the crash.  (Doc. No. 19, pp. 7-8 ¶ 21.) They also allege that she is liable under the bystander liability theory.  *Id.* at 9 ¶ 25.  Kelly is entitled to judgment on the pleadings under Rule 12(c).

Plaintiffs allege that Kelly knew it was reckless to speak with Trevino while the latter was driving the bus in the poor weather conditions, but that she chose to do so anyway.  (Doc. No. 19, pp. 7-8 ¶ 21.)  They also allege that she aided and abetted Trevino's own reckless actions.  *Id.*  But Plaintiffs' claim is short on specifics and long on conclusory assertions.  *Cf. Fernandez-Montes*, 987 F.2d at 284.  Plaintiffs sweepingly allege that Kelly

27 / 37

knew speaking to Defendant Trevino while Trevino operated the bus in the heavy
rain and poor driving conditions was reckless, and aided and abetted Defendant
Trevino's reckless actions. … Defendant Kelly had full and complete knowledge
that there was a substantial risk that Plaintiffs would be injured by her reckless
actions and inactions, especially since Plaintiffs were unbelted and shackled to
themselves completely incapable of protecting themselves, yet Defendant Kelly
intentionally and knowingly chose to violated Plaintiffs' rights.

(Doc. No. 19, pp. 7-8 ¶ 21.)  Other than alleging that Kelly called Trevino, and that Kelly knew

Trevino was driving the bus at the time she called him, *see* Doc. No. 19, p. 5 ¶ 13, Plaintiffs offer

no specifics about any of this.  They do not allege that Kelly knew of the weather conditions (she

was hundreds of miles away, traveling from North Texas to Gatesville, while Trevino was

driving the bus in South Texas).  They do not allege that Kelly knew the manner in which

Trevino was driving the bus – that is, allegedly too fast for conditions and "darting" in and out of

traffic.  They do not allege that Kelly knew the inmate bus passengers were not secured with seat

belts.  And in addition to not alleging *that* Kelly knew any of these things, they likewise do not

offer any specifics regarding *how* Kelly knew any of these things.

Plaintiffs are entitled to an assumption that their factual allegations are true, but

conclusory allegations dressed as facts do not enjoy such deference.  And because they are

represented by counsel, Plaintiffs are also not entitled to liberal construction of their complaint.

*See Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986); *Cook v. Louisiana Workforce,*

*L.L.C.*, Civ. No. 16-00587, 2017 WL 4322412, at *2 n.6 (M.D. La. Sept. 28, 2017).  Kelly's

subjective knowledge of a substantial risk of serious harm is indispensable to a finding of

deliberate indifference, but Plaintiffs' plausible factual assertions begin and end with the fact of

Kelly's phone call and her knowledge that Trevino was driving.  The rest of Plaintiffs'

allegations are unwarranted factual deductions and legal conclusions, which cannot defeat a Rule

12(c) motion.  Because Kelly cannot be held vicariously liable for Trevino's actions, *see*

*Thompkins*, 828 F.2d at 303-04, and because Plaintiffs fail to plausibly allege Kelly's subjective knowledge of a substantial risk of serious harm, the district court should grant Kelly's Rule 12(c) motion and dismiss Plaintiffs' claim of deliberate indifference against her.[8]  Because Kelly is entitled to judgment on the pleadings, she is also entitled to qualified immunity on this claim, because Plaintiffs have failed to plausibly allege a constitutional violation.  *See Guerra*, 82 F.4th at 285.

The district court should also dismiss Plaintiffs' bystander liability claim against Kelly based on qualified immunity.  As stated in *Whitley*, "liability will not attach where an officer is not present at the scene of a constitutional violation."  *Whitley*, 726 F.3d at 646.  Plaintiffs argue that Kelly was "present" at the scene because she was on the phone with Trevino at the time Trevino was driving recklessly.  (Doc. No. 19, pp. 8-9 ¶ 12; Doc. No. 35, p. 10.)  Say Plaintiffs:

> Kelly's cell phone communication with Trevino constitutes her presence at the scene based on the physical and mental requirements for Defendant Trevino to communicate through a cellular device with Defendant Kelly and to sufficiently cause Trevino to be physically and mentally distracted while driving.

(Doc. No. 35, p. 10.)  Although this is a creative theory of recovery, Plaintiffs cannot rely on it to prevail here in the face of Kelly's qualified immunity claim.  Plaintiffs point to no clearly established authority indicating that constructive or virtual presence at the scene of an alleged constitutional violation can support a claim of bystander liability.  Plaintiffs cite no controlling authority, robust consensus of persuasive authority, or indeed any case at all.  The Court's own

---

[8]  In their response to the Rule 12(c) motion, Plaintiffs argue for the first time that Kelly "knowingly and intentionally distract[ed]" Trevino.  (Doc. No. 35, pp. 7-8.)  There is no such allegation in Plaintiffs' complaint, and Plaintiffs cannot supplement their pleading with new factual allegations here.  When evaluating a Rule 12(c) motion, courts may consider only the facts set forth in the complaint, any documents attached to the complaint, and matters of which judicial notice may be taken under Federal Rule of Evidence 201.  *See Sylvester*, 2024 WL 1144259, at *5 (citing *Inclusive Cmtys. Project, Inc.*, 920 F.3d at 900).  In any event, this new factual assertion is itself conclusory, because Plaintiffs offer no explanation of how Kelly was intentionally distracting Trevino.

research reveals no such case, either.  *Cf. Reeves v. Franey*, No. 3:18-CV-03232, 2020 WL 5815903, at *4 n.25 (N.D. Tex. Sept. 29, 2020) (citing *Whitley* and noting: "Textually speaking, bystanders must be standing by.")  Because it was not clearly established on October 1, 2021 that bystander liability could attach to law enforcement officers who were not physically present at the scene of a constitutional violation, Kelly is entitled to qualified immunity.[9]

### 3. *Defendant Gonzalez.*

Plaintiffs allege that Gonzalez violated their Eighth Amendment rights by aiding and abetting Trevino's reckless driving.  Their contention is that Gonzalez knew Trevino was speeding while using his cell phone, and that Trevino was "high on cocaine with little to no rest the prior 30 days…."  (Doc. No. 19, p. 8 ¶ 22.)  Plaintiffs also allege that Gonzalez is liable under the bystander liability theory.  *Id.* at 9 ¶ 25.  Gonzalez is entitled to judgment on the pleadings under Rule 12(c).

According to Plaintiffs, Gonzalez – allegedly the supervisor of Trevino, Jerrell, and Kelly – was monitoring Trevino's driving in real time using an online system called "ATT Workforce Manager."  Gonzalez, Plaintiffs allege, therefore "knew Defendant Trevino was operating the bus recklessly in real-time by speeding and swerving during heavy rain and poor road conditions."  (Doc. No. 19, p. 9 ¶ 27.)  Plaintiffs also allege that Gonzalez "was also monitoring Defendants Trevino's and Kelly's state issued cell phones and knew they were talking to each other while Defendant Trevino was driving recklessly."  *Id.*  Plaintiffs allege that Gonzalez exhibited deliberate indifference by allowing Trevino to drive the bus while on the phone with

---

[9]  Because Kelly is entitled to qualified immunity from Plaintiffs' bystander liability claim based on her absence from the bus, it is unnecessary to determine whether Trevino's conduct amounted to a clearly established constitutional violation, whether Kelly knew that Trevino's conduct amounted to a constitutional violation, whether Kelly had a clearly established constitutional duty to intervene, or whether Kelly acquiesced in Trevino's conduct. *See Joseph*, 981 F.3d at 345; *Anderson*, 2024 WL 1526730, at *10.

Kelly, by allowing Trevino to drive while fatigued, and by allowing Trevino to drive while "high on cocaine."  *Id*. at 10 ¶ 27.

Plaintiffs' factual allegations, taken as true, plausibly allege that Gonzalez was aware that Trevino was driving the bus while talking with Kelly, and (through ATT Workforce Manager) that Trevino was driving the bus recklessly.[10]  Plaintiffs do not, however, allege any facts plausibly indicating that Gonzalez was aware the inmate passengers were not secured with seat belts.  They also do not plausibly allege that Gonzalez was aware Trevino had cocaine in his system while driving the bus, much less that he was "high."[11]

There is no vicarious liability under § 1983, *see Thompkins*, 828 F.2d at 303-04, so Gonzalez may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."  *Porter*, 659 F.3d at 446.  Supervisory liability without overt personal participation in the offensive act thus can lie only if the supervisory official "implement[s] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation."  *Thompkins*, 828 F.2d at 304 (internal quotations omitted).

Here, there is no allegation that Gonzalez implemented any sort of policy that caused any constitutional violation,[12] and Plaintiffs offer virtually no facts to allege that Gonzalez

---

[10]  Plaintiffs do not explain how the ATT Workforce Manager system allowed Gonzalez to know that Trevino was speeding or swerving.  They also do not explain how Gonzalez could monitor Trevino's and Kelly's cell phone usage in real time.  But these factual allegations are sufficiently specific ones, and the undersigned is bound – at least for Rule 12(c) purposes – to accept them as true, even if potentially doubtful.  *Summers*, 508 F. Supp. 3d at 130 (quoting *Twombly*, 550 U.S. at 555).

[11]  Plaintiffs allege only that Trevino tested positive for cocaine after the crash, at a post-accident drug test.  (Doc. No. 19, p. 6 ¶ 14.)

[12]  Plaintiffs appear to concede this in their response brief.  *See* Doc. No. 35, pp. 11-12.

affirmatively participated in Trevino's actions: at most, they claim that Gonzalez directed Trevino to drive the bus despite insufficient rest. *See* Doc. No. 19, p. 6 ¶ 15 (alleging that Trevino had worked for ten consecutive days and logged 76:30 hours of overtime in the 30 days prior to the crash, and that this workload "would be in violation of every state and federal motor carrier regulation, rule, and law to operate commercial motor vehicle").[13]   But even if Gonzalez held this knowledge subjectively, Plaintiffs must allege more: it is insufficient to claim merely that Trevino had worked the alleged number of hours.  To state a viable deliberate indifference claim against Gonzalez, Plaintiffs must plausibly allege that Gonzalez was subjectively aware that Trevino was so fatigued that his driving would pose a substantial risk to the safety of the inmates, and that Gonzalez then decided to order Trevino to drive the bus anyway.  Plaintiffs fall short – they do not allege any facts showing Gonzalez's subjective knowledge of a substantial risk to Plaintiffs' safety in directing Trevino to drive the bus after having worked the alleged number of hours.  Gonzalez is entitled to Rule 12(c) judgment on Plaintiffs' deliberate indifference claim against him.  Because Gonzalez is entitled to judgment on the pleadings, he is also entitled to qualified immunity on this claim, because Plaintiffs have failed to plausibly allege a constitutional violation. *See Guerra*, 82 F.4th at 285.

The district court should also grant Rule 12(c) judgment on Plaintiffs' claim of liability based on failure to supervise.  To survive a Rule 12(c) motion, Plaintiffs must plausibly allege that Gonzalez failed to supervise Trevino, that a causal link exists between the failure to supervise and the violation of Plaintiffs' rights, and (3) that Gonzalez's failure to train or

---

[13]  Although Plaintiffs allege that Gonzalez was able to monitor Trevino's driving, they do not allege that he was able to control or direct that driving as it was occurring.  Thus, any failure on Gonzalez's part to stop Trevino's allegedly reckless driving is more appropriately evaluated as a failure to supervise.  That claim is discussed in more detail below in the main text.

supervise amounts to deliberate indifference." *Brown*, 2024 WL 780452, at *4 (citing *Mesa*, 543 F.3d at 274). Deliberate indifference in this context requires "a conscious choice to endanger constitutional rights," and the proof of deliberate indifference requires more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Mesa*, 543 F.3d at 274 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

In this case, Plaintiffs' failure-to-supervise claim falls short. Even assuming for the sake of discussion that Gonzalez failed to adequately supervise Trevino by directing Trevino to drive the bus on insufficient rest, and assuming further that Trevino's fatigue caused a violation of Plaintiffs' rights,[14] Plaintiffs fail to plausibly allege any facts indicating Gonzalez made a conscious choice to endanger their constitutional rights. They also fail to allege anything more than a single instance of a lack of supervision causing a violation of constitutional rights. Plaintiffs do not allege that Gonzalez failed to supervise Trevino (or anyone else) on any other occasion, much less a pattern of failures to supervise. Gonzalez is therefore entitled to Rule 12(c) judgment on the pleadings on Plaintiffs' failure-to-supervise claim. Because Gonzalez is entitled to judgment on the pleadings, he is also entitled to qualified immunity on this claim, because Plaintiffs have failed to plausibly allege a constitutional violation. *See Guerra*, 82 F.4th at 285.

The district court should dismiss Plaintiffs' bystander liability claim against Gonzalez based on qualified immunity. As stated in *Whitley*, "liability will not attach where an officer is not present at the scene of a constitutional violation." *Whitley v. Hanna*, 726 F.3d at 646. Plaintiffs do not respond to Gonzalez's argument (Doc. No. 28, p. 10) that bystander liability

---

[14] For purposes of this discussion, the undersigned assumes without deciding that Trevino's actions amounted to a constitutional violation. *See Brown*, 2024 WL 780452, at *5.

cannot lie because Gonzalez was not present on the bus.  Plaintiffs point to no clearly established authority indicating that Gonzalez's presence on the bus was not required.  Because it was not clearly established on October 1, 2021, that bystander liability could attach to law enforcement officers who were not physically present at the scene of a constitutional violation, Gonzalez is entitled to qualified immunity.

### G.  Leave to amend?

Plaintiffs ask for leave to amend their complaint should the district court grant the Rule 12(c) motion.  (Doc. No. 35, pp. 13-14.)  They do not state how they would amend the complaint, nor do they suggest how they would overcome the identified deficiencies or what additional facts they might be capable of plausibly alleging.  And Plaintiffs have already filed four complaints in this case – an original complaint and now three amended complaints.  (Doc. Nos. 1, 3, 14, 19.)  However, this is the first occasion on which the sufficiency of the Plaintiffs' allegations has been challenged.

Federal Rule of Civil Procedure 15(a)(2) applies in this situation, because Plaintiffs failed to amend their complaint within 21 days after service of the Rule 12(c) motion.  *See* Fed. R. Civ. P. 15(a)(2).  Amendment is therefore permitted only with the defendants' written consent or if granted by the court.  Leave should be given freely when justice so requires.  *Id*.  Rule 15(a) "evinces a bias in favor of granting leave to amend."  *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).  Denial of leave to amend is a proper exercise of the court's discretion when the denial is based on a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility.  *See Tesla, Inc. v. Louisiana Automobile Dealers Ass'n*, Civ. No. 22-2982, 2023 WL 9059650, at *3 n.1 (E.D. La. Jan. 11, 2023) (citing *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014)).

Here, Plaintiffs have not repeatedly failed to cure deficiencies in their pleadings.  Indeed, this Rule 12(c) motion marks the first occasion on which the sufficiency of the complaint has been challenged.  At the same time, some of Plaintiffs' claims are simply not viable based on the facts, and so amendment of those claims would be futile.

The undersigned recommends that Plaintiffs be given the opportunity to amend their complaint to allege additional facts (if any additional facts exist) plausibly supporting some of their claims.  Specifically, Plaintiffs should be granted leave to amend their deliberate indifference and bystander liability claims against Jerrell, their claims of deliberate indifference against Kelly and Gonzalez, and their supervisory liability claim against Gonzalez.  Plaintiffs should be denied leave to amend their bystander liability claims against Kelly and Gonzalez, because those defendants' absence from the bus renders them protected by qualified immunity.

### H.  The motion to strike.

Finally, Plaintiffs have moved to strike the reply brief (Doc. No. 37) filed by Jerrell, Kelly, and Gonzalez.  They contend that the reply brief was untimely and should not be considered.  (Doc. No. 39.)  Counsel for the defendants apologize for the tardiness, which counsel attributes to an administrative oversight, but opposes the striking of the reply.  (Doc. No. 40.)

Plaintiffs are correct that the reply brief was untimely.  Rule 7.4(E) of this Court's local rules provides: "Replies.  Unless otherwise directed by the presiding judge, a party who has filed an opposed motion may file a brief within 7 days from the date the response is filed."  Here, Plaintiffs responded to the Rule 12(c) motion on March 27, 2024, and the defendants submitted their reply 14 days later, on April 10.  (Doc. Nos. 35, 37.)

While the Federal Rules of Civil Procedure authorize courts to strike a filing that contains "redundant, immaterial, impertinent, or scandalous matter," *see* Fed. R. Civ. P. 12(f), the exercise of that authority is discretionary.  *See In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979).  In addition to the authority conferred by the rules of civil procedure, the Court also possesses discretion to consider an untimely reply brief.  *See* Local Rule 7.8 (court may, in its discretion and upon its own motion or upon application, entertain and decide any motion, or shorten or extend time periods).  Here, the undersigned discerns no reason other than lateness to strike the untimely reply brief; there does not appear to be any prejudice to Plaintiffs from the late filing.  The undersigned is confident that counsel for Jerrell, Kelly, and Gonzalez will observe future filing deadlines, and recommends denial of the motion to strike.

### I. *Conclusion and recommendations.*

The district court should GRANT the Rule 12(c) motion (Doc. No. 28) and DISMISS Plaintiffs' claims against Jerrell, Kelly, and Gonzalez.  Dismissal of Plaintiffs' bystander liability claims against Kelly and Gonzalez should be with prejudice.  The district court should grant leave to amend with regard to Plaintiffs' other claims against Jerrell, Kelly, and Gonzalez, and should require the filing of any amended complaint by a date certain, such as 21 days after the district court's action.

The district court should DENY Plaintiffs' motion to strike the defendants' untimely reply brief (Doc. No. 39).

### J. *Notice.*

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate

Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on April 30, 2024.

MITCHEL NEUROCK
United States Magistrate Judge