United States District Court
Southern District of Texas
**ENTERED**
November 12, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MAX MARTINEZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00131 |
| v. | § | |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The undersigned recommends that the district court GRANT the motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Chev'Quan Jerrell, Tracey Kelly, and Mario Gonzalez (Doc. No. 54).[1]

**A.  *Proceedings.***

This is a civil rights action brought under 42 U.S.C. § 1983.  At issue here are some, but not all, of the allegations in the plaintiffs' Fourth Amended Complaint.  In prior proceedings, the Court granted judgment on the pleadings to defendants Chev'Quon Jerrell, Tracey Kelly, and Mario Gonzalez under Federal Rule of Civil Procedure 12(c), finding that Plaintiffs had failed to state claims against Jerrell, Kelly, and Gonzalez upon which relief could be granted and that Plaintiffs had failed to overcome the qualified immunity defense invoked by those defendants. (Doc. No. 46.)  A fourth defendant, Antonio Trevino, did not move for judgment on the pleadings.  After granting judgment on the pleadings, the Court allowed Plaintiffs to amend their

---

[1]  This case has been referred to the undersigned for pretrial case management and for recommendations on dispositive motions, pursuant to 28 U.S.C. § 636.  (Doc. No. 34.)

complaint in some respects; the Court denied leave to amend several claims because amendment would have been futile.  (Doc. No. 51.)  This Fourth Amended Complaint, the operative complaint, followed.[2]

Plaintiffs, who are or were prison inmates, allege that their Eighth Amendment rights were violated because defendant Trevino's alleged reckless bus driving caused a crash while he was transporting them.  *See* Doc. No. 52, pp. 3-8 ¶¶ 9-16.  Defendant Jerrell, according to Plaintiffs, is also liable because he allegedly had a duty and a reasonable opportunity to prevent the harm but intentionally chose not to act.  *Id*. at 14 ¶¶ 26-27.  Plaintiffs also claim that defendants Jerrell, Kelly, and Gonzalez are liable because they acted with deliberate indifference to Plaintiffs' health and safety.  *Id.* at 11-14 ¶¶ 23-25.  Plaintiffs seek damages from each of these individual defendants, including punitive damages.  *Id*. at 15 ¶¶ 28-30.

In a single motion, defendants Jerrell, Kelly, and Gonzalez, but not Trevino, seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), each asserting qualified immunity from suit and that Plaintiffs have failed to state a viable cause of action against them. (Doc. No. 24.)  Plaintiffs have responded.  (Doc. Nos. 57, 58.)[3]  Jerrell, Kelly, and Gonzalez filed a reply to that response.  (Doc. No. 59.)  A grant of the dismissal motion would remove Jerrell, Kelly, and Gonzalez from this case, but Plaintiffs' claims against Trevino would remain.

---

[2]  The Fourth Amended Complaint supersedes the prior operative complaint because it did not specifically refer to and adopt the prior complaint or incorporate it by reference.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

[3]  Plaintiffs Max Martinez and Mark Perez are represented by the Aguirre Law Firm; all of the other plaintiffs are represented by the White & Carlson law firm.  *See* Doc. No. 52, pp. 16-17.  All of the plaintiffs joined together in filing the Fourth Amended Complaint.  *See id*.  In responding to the motion for judgment on the pleadings, plaintiffs Martinez and Perez filed a response through their Aguirre Firm counsel (Doc. No. 58), and the other plaintiffs separately responded through their White & Carlson counsel (Doc. No. 57).  The responses are essentially identical to one another.

### B. *Plaintiffs' allegations.*

Plaintiffs' operative complaint is the Fourth Amended Complaint.  (Doc. No. 52.)  As will be discussed in greater detail below, and for purposes of this dismissal motion, the undersigned presumes that all of Plaintiffs' factual allegations are true, except where noted and explained otherwise.

### 1. *Factual allegations.*

#### a. *The bus trip and crash.*

Plaintiffs allege that defendant Trevino, an employee of the Texas Department of Criminal Justice (TDCJ), was driving a prison bus from Edinburg, Texas to San Antonio starting at 5:12 a.m. on October 1, 2021.  (Doc. No. 52, p. 2-3 ¶ 5; *id*. at 3-4 ¶ 9.)  Defendant Jerrell, also a TDCJ employee, was on board, as were 44 prison inmates (including all of the plaintiffs in this case).  *Id*. at 3 ¶ 6; *id*. at 4 ¶ 9.  Trevino and Jerrell had already been on duty for several hours by that point, having begun their work shifts in Beeville, Texas at 1:00 that morning.  *Id*. at 3 ¶ 9.  The undersigned takes judicial notice that Beeville is 168 miles from Edinburg.

Upon boarding the bus, one or more of the plaintiffs requested seat belts.  (Doc. No. 52, p. 4 ¶ 9; *id*. at 5 ¶ 11.)  Plaintiffs claim that Trevino and Jerrell "denied" the requests for seat belts, "as had been the custom in the past."  *Id*. at 4 ¶ 9.  In any event, however, the bus was not equipped with seat belts.  *See id*. at 10 ¶ 22; *id*. at 11 ¶ 23; *id*. at 12 ¶ 24.  Plaintiffs were shackled with handcuffs and leg irons and sat on plastic seats with no seat belt or safety harness "and with no possible way to brace or protect themselves in case of a crash."  *Id*. at 4 ¶ 9.

Trevino drove the bus, while Jerrell was in the rear.  (Doc. No. 52, p. 4 ¶ 9.)  From the outset, Plaintiffs claim, Trevino drove recklessly.  According to Plaintiffs, Trevino swerved and sped, even though weather conditions were poor.  *Id.* ¶ 10.  Trevino was also allegedly using

both his personal and state-owned cell phones while driving.  *Id.* at 4-5 ¶ 10.  The inmate passengers allegedly pleaded to Trevino and Jerrell "to operate the bus in a reasonable manner," but Trevino "continued to speed and drive recklessly while simultaneously operating his phones in inclement weather."  *Id*. at 5 ¶ 11.  Jerrell allegedly told the inmates "to stay quiet and that the officers didn't care about the inmates' concerns for their health and safety."  *Id.*

About 90 minutes into the trip, at about 6:33 a.m., Trevino stopped the bus.  This was an unauthorized stop, as Trevino had requested permission to stop but had been denied (Plaintiffs do not allege by whom).  (Doc. No. 52, p. 5 ¶ 12.)  Trevino stopped because he was looking for his state-issued cell phone, which he had dropped while driving.  *Id*.  Trevino had been using his state-issued cell phone to "talk and communicate with others, including Defendant Kelly," while driving the bus.  *Id*.  Trevino used his personal cell phone to call his state-issued cell phone, to assist himself in finding the latter phone, which Jerrell eventually found under the bus' accelerator pedal.  *Id*.

Having found his phone, Trevino started driving toward San Antonio again, but now was behind schedule and needed to make up time.  (Doc. No. 52, p. 6 ¶ 14.)  Trevino and Jerrell allegedly agreed that Trevino would have to drive faster in order to arrive at the destination on time, even though weather and driving conditions were allegedly deteriorating.  *Id.*  Trevino then "began operating the bus in an increasingly reckless manner," increasing his speed to 75 miles per hour (in a 65 mile-per-hour zone) and "dart[ing] in and out of traffic" on the highway in the "pouring rain."  *Id.*  The inmate passengers allegedly asked Trevino and Jerrell to stop the reckless driving and "for some kind of protection from the inevitable."  *Id.*  Trevino and Jerrell allegedly told Plaintiffs, however, "to be quiet, that they have no rights, and their concerns do not

matter as the reckless driving was part of the plan that Trevino and Jerrell schemed during the unauthorized stop." *Id.*

At 7:04 a.m., Trevino received a call on his state-issued cell phone from defendant Kelly. At that time, Kelly was herself a passenger in a TDCJ vehicle elsewhere in the state, traveling from the Plane Unit to Gatesville. (Doc. No. 52, p. 7 ¶ 15.)[4]  According to Plaintiffs, Kelly knew that Trevino was driving 44 inmates at the time of her call and that it was "dangerous, reckless, and illegal" to operate the bus while operating a cell phone "as they had previously communicated earlier that morning about Trevino's duties for the day," but Kelly called and spoke with him anyway. *Id.*  Many of the plaintiffs were "yelling and screaming" for Trevino to slow down "in fear for their lives, seeing that he was speeding while talking on his phone during poor weather and road conditions." *Id.*  Kelly allegedly could hear the inmates' pleas, but she and Trevino "cruelly joked and laughed at the danger they were placing Plaintiffs in." *Id.*

While Trevino was speeding and talking on the phone with Kelly, the bus hydroplaned and flipped onto its right side.  This caused the unbuckled plaintiffs to "fly out of their seats and crash into the metal wall and roof of the bus without being able to protect themselves."  (Doc. No. 52, p. 8 ¶ 16.)

Later investigation revealed that Trevino had been on the phone with Kelly during the crash.  (Doc. No. 52, p. 8 ¶ 16.)  Trevino had been driving the bus at 75 miles per hour immediately prior to the crash.  *Id.*  Trevino, however, wrote in a post-crash statement that he had slowed down to 55 to 65 miles per hour because of the heavy rain and poor driving

---

[4]  The undersigned takes judicial notice that Gatesville (Kelly's destination that day) is 173 miles from San Antonio and 401 miles from Edinburg.  The Plane Unit (Kelly's departure point that day) is located in Dayton, Texas, which is 230 miles from San Antonio and 372 miles from Edinburg.

conditions.  *Id.*  Trevino received a citation for "unsafe speed" from the Texas Department of Public Safety.  *Id.*

Investigation also revealed that Trevino had worked for ten consecutive days prior to beginning his October 1 shift, and that he had "worked a total of 76:30 hours of overtime" in the 30 days prior to the crash.  (Doc. No. 52, p. 8 ¶ 17.)  And in a post-crash drug test, Trevino tested positive for cocaine.  *Id.* ¶ 16.

### b. Trevino.

Plaintiffs allege that Trevino "habitually used cocaine to stay awake during excessive work hours, particularly during overtime graveyard shifts."  (Doc. No. 52, p. 3 ¶ 9.)  They claim that Trevino had minimal sleep in the previous week because of his prolonged work schedule, and "relied on the stimulant to perform his duties, as was his custom."  *Id.*  Plaintiffs allege, without further detail, that Trevino's "custom" was "well known to fellow TDCJ staff members."  *Id.* at 4 ¶ 9.

### c. Jerrell.

According to Plaintiffs, defendant Jerrell, at the back of the bus, "was acutely aware of and especially subject to Trevino's reckless driving," including his "swerves, jerks, abrupt stops, etc."  (Doc. No. 52, p. 4 ¶ 10.)  Plaintiffs claim that Jerrell also knew that Trevino was operating the bus recklessly "by speeding and using his personal and state-issued cell phones – against TDCJ policy – and in violation of Plaintiffs' constitutional rights which both Defendants had been trained on through personnel handbooks and TDCJ Training Academy curriculum."  *Id.* at 4-5 ¶ 10.  Plaintiffs also allege, without further detail, that Jerrell "knew Trevino was high on cocaine and severely fatigued."  *Id.* at 9 ¶ 18.

Plaintiffs claim that Jerrell "was aware of the obvious and substantial risks of the serious harm associated with reckless driving, especially when it comes to unbelted passengers with no means to brace themselves," but that he "made a conscious decision not to intervene, even though he had been trained that he had a duty to do so." (Doc. No. 52, p. 5 ¶ 11.) Plaintiffs allege that Jerrell knew that Trevino had been using his personal cell phone while driving but "did not care of the consequences to Plaintiffs' rights having consciously decided that the health, safety, and welfare of Plaintiffs did not matter." *Id.* at 5-6 ¶ 12. According to Plaintiffs, Jerrell knew that Trevino was "actively violating the law and Plaintiffs' constitutional rights by operating the bus in such an obviously reckless nature" and had a duty to intervene in Trevino's conduct, but "deliberately made no attempt to do so." *Id.* at 6 ¶ 13. Specifically, Jerrell "did not require or even ask Defendant Trevino to put the cell phone away, did not alert his superiors of Trevino's driving so they could intervene, and did not ask to drive the bus so Trevino could make his phone calls." *Id.* at 6 ¶ 13. Instead, Jerrell allegedly "went back to looking at [a] social media account on his personal cell phone – the possession of which was a TDCJ violation – and chose to disregard any opportunity he had to prevent the risk of serious harm caused by Defendant Trevino like he had been trained to do as a shot gun guard." *Id.* at 6-7 ¶ 14.

### d. Kelly.

Plaintiffs allege that at the time when Kelly called Trevino, she knew that Trevino was driving 44 inmates "and that it was dangerous, reckless, and illegal to operate said vehicle while operating a cell phone as they had previously communicated earlier that morning about Trevino's duties for the day." (Doc. No. 52, p. 7 ¶ 15.) Plaintiffs also allege, without further detail, that Kelly knew of Trevino's cocaine use "and knew he'd be under the influence at the time he was driving." *Id.*

7 / 41

### e. Gonzalez.

Plaintiffs allege that defendant Gonzalez, Trevino's supervisor, knew Trevino had a cocaine habit, but "ordered Trevino to operate the bus anyways despite his knowledge that such an order was a violation of the rights, safety, and welfare of Plaintiffs."  (Doc. No. 52, p. 4 ¶ 9.)

According to Plaintiffs, Trevino's overtime workload (76:30 hours of overtime in the 30 days prior to the crash) "would be in violation of every state and federal motor carrier regulation, rule, and law to operate a commercial vehicle."  (Doc. No. 52, p. 8 ¶ 17.)  Trevino had allegedly "expressed concerns for his lack of sleep" to Gonzalez.  *Id.* at 13 ¶ 25.  Nevertheless, Gonzalez ordered Trevino to drive the bus.  *Id.* at 8 ¶ 17.  This type of "encouragement fostered Defendant Trevino's reliance on stimulants such as cocaine in order to perform his job duties – to which Defendant Gonzalez knew about."  *Id.*

Plaintiffs allege that Gonzalez knew that Trevino was operating his personal and state-issued cell phones while driving recklessly throughout the trip.  (Doc. No. 52, p. 9 ¶ 18.)  Plaintiffs do not, however, allege any facts explaining how Gonzalez knew this.  Likewise, Plaintiffs allege that Gonzalez knew that Trevino was "high on cocaine," *id.*, but do not allege facts explaining how Gonzalez knew this.

### 2. Plaintiffs' legal claims.

Based on the foregoing alleged facts, Plaintiffs claim that defendants Jerrell, Kelly, and Gonzalez violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment by acting with deliberate indifference to a substantial known risk of harm to

Plaintiffs, and additionally in Jerrell's case by failing to intervene, where intervention would have prevented the plaintiffs' injuries.  *See* Doc. No. 52, pp. 11-14 ¶¶ 23-25.[5]

### a. Deliberate indifference.

#### i. Jerrell.

According to Plaintiffs, Jerrell violated Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment by assisting Trevino with finding the dropped cell phone despite knowing that "Trevino was high, operating off little to no sleep, speeding/swerving, and operating two cell phones at once."  (Doc. No. 52, p. 11 ¶ 23.)  Jerrell knew that the bus had no seatbelts and that Plaintiffs were shackled.  *See id.*  Jerrell allegedly also had been "trained thoroughly" by TDCJ[6] regarding the dangers posed by these conditions.  *Id.*  Jerrell allegedly had observed Trevino talking on his cell phone while driving prior to the unauthorized stop, but nevertheless helped Trevino find the phone during that stop after Trevino dropped it.  *Id.*

#### ii. Kelly.

Plaintiffs allege that Kelly violated their Eighth Amendment rights by calling Trevino – and continuing that call with him – despite allegedly knowing that Trevino would be driving the inmates at that time and that the weather was expected to be poor.  (Doc. No. 52, p. 12 ¶ 24.)  Kelly's phone call, Plaintiffs allege, "contribut[ed] towards his already reckless driving."  *Id.*  Plaintiffs allege that Kelly had been taught not to call drivers while they were transporting inmates, but that she chose to do so anyway.  *Id.*  Once the call began, Kelly allegedly knew "almost immediately that the weather and road conditions were poor from the heavy downpour,

---

[5]  Plaintiffs also claim that Trevino violated their Eighth Amendment rights.  *Id.* at 10-11 ¶ 22.  Trevino has not moved for dismissal.

[6]  This training was allegedly provided as part of the "professionalism and ethics curriculum" at TDCJ's Correctional Officer Training Academy.  *Id.* at 12 ¶ 23.

and she could hear the cries and pleas of the inmates in the background of her call with Trevino to slow down and get off the phone, yet she continued the conversation with Trevino anyways …." *Id.* Kelly was allegedly aware, thanks to her own experience driving prisoner buses, that Trevino's bus lacked seatbelts and that the inmates would not be capable of bracing themselves. *Id.* Kelly, say Plaintiffs, "due to her appreciation of these factors," had "subjective knowledge of the risk her actions posed and disregarded the risk …." *Id.*

### iii. Gonzalez.

Plaintiffs allege that Gonzalez also violated their Eighth Amendment rights by ordering Trevino to drive the bus with the knowledge that Trevino "was working off little to [no] sleep and was high on cocaine." (Doc. No. 52, p. 13 ¶ 25.) This, Plaintiffs allege, constituted affirmative participation in Trevino's violation of Plaintiffs' rights. Gonzalez's knowledge of Trevino's overtime hours and his "well-known drug habit" allegedly made Gonzalez aware of an excessive risk to Plaintiffs' health and safety. *Id.* Plaintiffs also claim that Gonzalez had a "ubiquitous practice of not allowing drivers, such as Defendant Trevino, to take sufficient days off to rest and recover from grueling work hours." *Id.* Because of this, Gonzalez allegedly "personally participated in implementing a policy that was certain to, and did, result in constitutional injury." *Id.*

According to Plaintiffs, Gonzalez also had a "longstanding pattern" of not enforcing TDCJ policies, such as TDCJ's alleged policies forbidding cell phone use while driving, driving while fatigued, speeding during inmate transport, and drug use. (Doc. No. 52, p. 13 ¶ 25.) Gonzalez's failures, Plaintiffs allege "fostered an unconstitutional system that was the catalyst for Defendant Trevino's violation of every single one of these policies" that caused the accident and violated Plaintiffs' rights. *Id.* at 13-14 ¶ 25. Gonzalez, Plaintiffs say, "made a personal,

intentional choice to continuously implement unconscionable practices he was aware would put at excessive risk Plaintiffs' health and safety and violate their constitutional rights." *Id.* at 14 ¶ 25.

### b. Bystander liability.

Plaintiffs also allege that Jerrell is liable under § 1983 based on a theory of bystander liability. This, they say, is because he failed to take reasonable measures to protect Plaintiffs from "Trevino's unconstitutional actions even though he had been trained that he had a duty to do so as a bystander and fellow TDCJ correctional officer." (Doc. No. 52, p. 14 ¶ 27.) Specifically, Plaintiffs allege that Jerrell "was taught during TDCJ Correctional Officer Training Academy about inmates' legal rights and the significance the Eighth Amendment plays in his role as a correctional officer, rendering his intervention a requirement. Therefore, he was aware that Defendant Trevino was violating Plaintiffs' rights …." *Id.* Plaintiffs assert that Jerrell was in a unique position to prevent Trevino from driving the bus recklessly, but chose not to act. *Id.* "Not only did he have ample opportunity to disrupt Trevino's deliberate indifference for Plaintiffs' constitutional rights, but [] Jerrell also acquiesced in this violation, revealing his own deliberate indifference, by helping Trevino find his phone during the unauthorized stop, so he could continue using it and driving recklessly." *Id.*

### C. The parties' positions on the dismissal motion.

#### 1. Jerrell, Kelly, and Gonzalez.

In their motion seeking dismissal, Jerrell, Kelly, and Gonzalez all argue that Plaintiffs have failed to plead viable claims against them.

Jerrell argues that he could not have denied seatbelts to Plaintiffs because the bus was not equipped with them. (Doc. No. 54, p. 7.) He also argues that Plaintiffs' claims fail to plausibly

allege that his act of helping Trevino find the dropped cell indicate his subjective knowledge that Trevino would then use the phone in such a manner as to create a substantial risk of harm. *Id.* at 7-8.  Jerrell also assails as conclusory Plaintiffs' allegation that he and Trevino "schemed" to speed after the unauthorized stop. *Id.* at 8-9.  And he contends that Plaintiffs fail to allege facts sufficient to show that Jerrell failed to intervene in an observed violation of Plaintiffs' constitutional rights. *Id.* at 9-10.

Kelly, meanwhile, attacks as conclusory Plaintiffs' allegations that she was aware of any facts other than that Trevino was driving, that it was raining, and that the bus lacked seatbelts. (Doc. No. 54, p. 11.)  She also argues that "the act of calling someone that one knows to be driving in the rain" is not so reckless as to warrant Eighth Amendment liability. *Id.* at 11-12.

Gonzalez contends that that his alleged act of ordering Trevino to drive the bus does not constitute personal involvement in Trevino's subsequent alleged constitutional violations.  (Doc. No. 54, p. 12.)  Gonzalez argues that Plaintiffs' allegation that he knew that Trevino had used cocaine before driving the bus is conclusory. *Id.* at 13.  He also argues that Plaintiffs have failed to plead any nonconclusory facts indicating that he knew Trevino was unfit to drive the bus because of his previous overtime hours. *Id.*  Finally, Gonzalez contends that Plaintiffs fail to plausibly allege that he implemented any unconstitutional policy. *Id.* at 13-14.

Jerrell, Kelly, and Gonzalez all argue that Plaintiffs have failed to overcome their qualified immunity from suit.  (Doc. No. 54, pp. 14-18.)[7]  Jerrell contends that Plaintiffs fail to show that his actions violated clearly established law, or that his actions were so obviously unconstitutional as to render controlling case law unnecessary. *Id.* at 16-17.  According to Kelly,

---

[7]  All three of these defendants invoked qualified immunity previously, as part of their motion for judgment on the pleadings.  (Doc. No. 28.)

Plaintiffs have failed to identify any case in which a defendant was found to be deliberately indifferent, or even negligent, for calling an individual he or she knew was driving a vehicle. *Id.* at 17. And Gonzalez argues that Plaintiffs identify no case in which a supervisor was held liable for ordering an officer to drive an inmate transport while knowing that the officer had worked extended hours. *Id.* at 17-18.

### 2. *Plaintiffs.*

In response, Plaintiffs argue[8] that they have sufficiently alleged Eighth Amendment deliberate indifference claims against Jerrell, Kelly, and Gonzalez.[9] First, they contend that "[t]his Court has long held that inmates' constitutional rights are violated when the inmates as passengers have requested a seatbelt and were denied while traveling at an unsafe speed." (Doc. No. 57, p. 8 (citing *Wilbert v. Quarterman*, 647 F. Supp 2d 760, 770 (S.D. Tex. 2009)).

Jerrell, Plaintiffs contend, affirmatively exacerbated the danger to Plaintiffs by helping Trevino find the dropped cell phone. (Doc. No. 57, pp. 8-10.) This, they say, was because Jerrell helped Trevino find the phone "so that Trevino could continue using it while driving recklessly notwithstanding TDCJ policy forbidding cell phone use while driving." *Id.* at 9. Plaintiffs further argue that Jerrell's comprehensive training made him aware that he had a duty to intervene to stop Trevino's allegedly unconstitutional actions, but that he failed to do so. *Id.* at 10.

---

[8] The two groups of plaintiffs, represented by two different law firms, filed response briefs that are essentially identical to each other. For simplicity, the undersigned does not cite the responses separately.

[9] Plaintiffs include a "statement of facts" as part of their response to the dismissal motion. (Doc. No. 57, pp. 2-7.) To the extent those facts might differ from or add to the factual allegations in the Fourth Amended Complaint, the undersigned disregards them, because new facts that were not contained in the operative pleading cannot be alleged in a response to a dismissal motion. *See Hicks v. Ashworth*, Civ. No. H-23-2234, 2024 WL 3243474, at * 6 (S.D. Tex. June 26, 2024) (Rosenthal, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

Plaintiffs argue that the risk posed by Kelly's act of calling Trevino is "self-evident and within the realm of common sense." (Doc. No. 57, p. 11.) They contend that Kelly's phone call was found to be a contributing factor in the crash. *Id.*[10] Plaintiffs also assert that Kelly's knowledge of the excessive risk caused by her phone call to Trevino "is unavoidable." *Id.* "Kelly, acting as a reasonable officer, would have understood that Plaintiffs' lives were endangered through her knowledge, actions, and inactions when calling up Trevino, and continuously speaking to him ultimately contributing to the crash." *Id.* at 11-12.

Regarding Gonzalez, Plaintiffs respond that he affirmatively participated in Trevino's acts by ordering him to drive "notwithstanding having subjective knowledge that Trevino had little to no sleep, was high on cocaine, and that the Plaintiffs faced a substantial risk of being harmed." (Doc. No. 57, p. 13.) They also argue that Gonzalez "created a reckless standard for inmate transportation" by not enforcing TDCJ policies. *Id.* at 12.

Plaintiffs respond to the defendants' qualified immunity argument by arguing that "a correctional officer's qualified immunity defense should fail if they did not act in their position according to the law, since it is reasonable that a TDCJ officer have knowledge of the law governing their conduct." (Doc. No. 57, p. 13) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Plaintiffs argue that the right to be free from cruel and unusual punishment is clearly established, and that "nuances of this right, including methods to uphold its protections and actions that would constitute its violation, were provided to all defendants" during TDCJ's training academy for correctional officers. *Id.* Plaintiffs also argue that it is "clearly established

---

[10] Plaintiffs cite the Fourth Amended Complaint for this assertion. *Id.* at 11 (citing Doc. No. 52, pp. 12-13 ¶ 24.) The Fourth Amended Complaint, however, contains no such allegation.

that recklessly driving unbelted and unshackled inmates violates an inmate's Eighth Amendment rights." *Id.* at 14.

### D. Law.

#### 1. Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert by motion a defense that a plaintiff's complaint "fail[s] to state a claim upon which relief may be granted." In evaluating a motion for dismissal under this rule, courts assess whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The requirement for facial plausibility is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The pleading standard does not require detailed factual allegations, but does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Hogan v. Southern Methodist Univ.*, 74 F.4th 371, 374 (5th Cir. 2023) (citing *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022)); *Iqbal*, 556 U.S. at 677-78.

Courts may, in evaluating motions filed under Rule 12(b)(6), consider evidence that is attached to the motion itself, referred to in the complaint, and central to the plaintiff's claim, or that is subject to judicial notice under Federal Rule of Evidence 201. *George*, 36 F.4th at 619 (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)). If the court considers evidence beyond the pleadings or these additional matters, the court commits error. *Id.* (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)).

A Rule 12(b)(6) motion "tests the sufficiency of the pleadings, not the merits of the case." *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (citing *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020)). For this reason, well-pleaded factual allegations in a complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Id.* But legal conclusions are not entitled to such acceptance, nor are threadbare recitals of elements of a cause of action supported by mere conclusory statements. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Additionally, conclusory allegations and unwarranted deductions of fact are not accepted as true: Plaintiffs must plead "'specific facts, not mere conclusory allegations' to state a claim for relief that is facially plausible." *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). Legal conclusions masquerading as factual conclusions likewise will not suffice to prevent the granting of a motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 285 (5th Cir. 1993).

As applied here, Plaintiffs must plead "'enough facts to state a claim to relief that is plausible on its face.'" *Summers v. Hinds Cnty., Miss.*, 508 F. Supp. 3d 124, 129-30 (N.D. Miss. 2020) (quoting *Twombly*, 550 U.S. at 570). As *Twombly* clarified, and as *Summers* reiterated, factual allegations "'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Summers*, 508 F. Supp. 3d at 130 (quoting *Twombly*, 550 U.S. at 555).

### *2. 42 U.S.C. § 1983.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a § 1983 claim, a plaintiff must prove that a person acting

under the color of state law deprived him or her of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### 3. Eighth Amendment.

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  The Eighth Amendment's prohibition is made applicable to the states by the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962).

Prison inmates have an Eighth Amendment right to be protected from harm.  *See Rogers v. Boatright*, 709 F.3d 403, 407-08 (5th Cir. 2013).  Prison officials must take reasonable measures to guarantee the safety of inmates.  *See Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  A viable Eighth Amendment claim requires a prisoner to plausibly allege that prison officials acted with deliberate indifference to the prisoner's safety.  *See Nixon v. Neal*, Civ. No. 20-2934, 2021 WL 2688950, at *8 (E.D. La. June 7, 2021), *adopted*, 2021 WL 2680163 (E.D. La. June 30, 2021).  A prison official acts with deliberate indifference if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

"Deliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001).  The Fifth Circuit has "consistently recognized … that 'deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'"  *Dyer v. Houston*, 964 F.3d 374, 381

(5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 458-59 (5th Cir. 2001));

*see also Aguirre v. City of San Antonio*, 995 F.3d 395, 420 (5th Cir. 2021) ("Negligence or even

gross negligence is not enough: the officials must have had actual knowledge of the substantial

risk.").

Thus, Plaintiffs' claim of each defendant's liability must plausibly allege nonconclusory

facts indicating either that the relevant defendant personally participated in the violation of

Plaintiffs' rights or that the defendant had subjective knowledge that Plaintiffs faced a substantial

risk of harm to their health and safety and then disregarded that risk.  *See Valentine v. Collier*,

993 F.3d 270, 281 (5th Cir. 2021); *Cook v. Crow*, No. 1:20-CV-85, 2021 WL 6206795, at *3

(E.D. Tex. July 26, 2021), *adopted*, 2022 WL 23169 (E.D. Tex. Jan. 3, 2022) (citing *Farmer*,

511 U.S. at 840-41, and *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (plaintiff must

plausibly allege that each defendant was "aware of an excessive risk to the plaintiff's health or

safety, and yet consciously disregarded the risk.")).  Plaintiffs must allege that the relevant

defendant was aware of facts from which the inference could be drawn that a substantial risk of

serious harm existed, and that the defendant also actually drew that inference.  *See Domino*, 239

F.3d at 755.

A defendant's subjective knowledge could be plausibly alleged in a number of ways,

including inference from circumstantial evidence of which the defendant is aware, and under

exceptional circumstances a defendant's knowledge of a substantial risk of harm may be inferred

by the obviousness of the risk, if that official is aware of the facts from which that inference

could be drawn.  *See Domino*, 239 F.3d at 755; *Farmer*, 511 U.S. at 842; *Easter v. Powell*, 467

F.3d 459, 463 (5th Cir. 2006).  The standard for such obviousness, though, is "sky high."  *Joseph*

*ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020).  And the failure to

alleviate a significant risk that an official should have perceived, but did not, does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

### 4. Bystander liability.

In this circuit, a prison official may violate the Eighth Amendment by failing to take reasonable measures to protect an inmate from another officer's unconstitutional actions under a theory of bystander liability. *See Martinez v. Bowers*, Civ. No. H-23-768, 2024 WL 1703086, at *5 (S.D. Tex. Apr. 19, 2024) (Rosenthal, J.). A claim under § 1983 for such a failure to intervene can lie where an officer (1) knows that a fellow officer is violating an individual's constitutional rights, (2) is present at the scene of the constitutional violation, (3) has a reasonable opportunity to prevent the harm, but (4) chooses not to act. *Joseph*, 981 F.3d at 343. More than mere presence is required in the vicinity of the violation, however: "we also consider whether an officer acquiesced in the alleged constitutional violation." *Joseph*, 981 F.3d at 323 (quoting *Whitley*, 726 F.3d at 647). When the evidence shows that a defendant was generally aware of the constitutional violation "but did not actively acquiesce in the violation, the evidence is insufficient to establish bystander liability." *Martinez*, 2024 WL 1703086, at *6 (citing *Joseph*, 981 F.3d at 343; *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (per curiam)).

### 5. Qualified immunity.

When a defendant invokes the defense of qualified immunity, the plaintiff has the burden of demonstrating that the qualified immunity defense is inapplicable. *See Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). "This court applies a two-step analysis to determine whether a government official is entitled qualified immunity, inquiring: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged

misconduct." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011)); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The basis for the qualified immunity doctrine is that officials who perform their duties reasonably should not fear the harassment, distraction, and liability of a civil lawsuit for simply doing their job, while those who exercise their power irresponsibly should be held accountable. *See Pearson*, 555 U.S. at 231. Qualified immunity is a generous shield: it provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Thus, a government official can be held personally liable for monetary damages only if the official's particular conduct "violated a statutory or constitutional right" and "the right was 'clearly established' at the time of the challenged conduct." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *al-Kidd*, 563 U.S. at 735). Courts have "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 563 U.S. at 735 (citing *Pearson*, 555 U.S. at 236).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up)). A binding court case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*; *see also Malley*, 475 U.S. at 341. "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather the inquiry must focus on

whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citing *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004)).  Absent controlling authority, there must be a "robust 'consensus of cases of persuasive authority.'" *al-Kidd*, 563 U.S. at 741 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).  And the controlling decision or consensus must be with regard to the official's "*particular* conduct," described with specificity.  *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166 (5th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)).  The inquiry is judged against the backdrop of the law at the time of the conduct.  *Morgan v. Chapman*, No. 6:17-CV-00004, 2022 WL 4367057, at *8 (S.D. Tex. Sept. 20, 2022) (Tipton, J.) (citing *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

In the context of a bystander liability claim, a plaintiff must show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing that the acting officer was violating a clearly established constitutional right.  *See Anderson v. Harris Cnty., Tex.*, No. 4:21-CV-03730, 2024 WL 1526730, at *10 (S.D. Tex. Mar. 10, 2024) (Bennett, J.); *Howard v. City of Houston, Tex.*, Civ. No. H-21-1179, 2022 WL 479940, at *12 (S.D. Tex. Feb. 16, 2022) (Miller, J.) (citing *Joseph*, 981 F.3d at 345)).  Plaintiffs here must show that "any reasonable officer would have known that the Constitution required them to intervene." *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 301 (5th Cir. 2023) (quoting *Joseph*, 981 F.3d at 345) (cleaned up).

### E.  Discussion.

The district court should dismiss all of Plaintiffs' claims against Jerrell, Kelly, and Gonzalez.  Plaintiffs either fail to plausibly allege a violation of their constitutional rights by

these defendants, or the defendants are shielded by qualified immunity because Plaintiffs have failed to plausibly allege that their actions violated clearly established law, or both.

### 1. The bus trip, and Trevino's actions.

Defendant Trevino has not moved for dismissal, but an examination of his actions as the driver of the bus is useful in determining whether the other defendants, who were not driving, can be held individually liable for the alleged violations of Plaintiffs' rights.

In this case, Plaintiffs allege that Trevino drove the bus recklessly, knowing that the prisoners were not restrained with seat belts. According to Plaintiffs' allegations, Trevino used at least one of the two cell phones he had with him while driving the bus, and was engaged in a voice call with defendant Kelly when the crash occurred. Trevino also had cocaine in his system and had worked significant overtime in the month prior to the crash. Plaintiffs do not allege that Trevino was aware of any prior crashes involving TDCJ transport vehicles with unrestrained inmate passengers.

Against this backdrop, consideration of several relevant cases is appropriate. Prison transport vehicles are not required to be equipped with seatbelts, and transport of a prisoner without seatbelts is not a violation of the prisoner's constitutional rights. *Cf. Jimenez v. Travis Cnty. Sheriff's Dept.*, 856 F. App'x 534, 535 (5th Cir. 2021) ("there is no federally protected right to safety restraints in prison transport vehicles"); *Burns v. Davis*, No. 4:15-CV-3280, 2017 WL 4250529, at *3 (S.D. Tex. Sept. 22, 2017) (Bennett, J.). The Fifth Circuit has held, however, that a plaintiff made a nonfrivolous Eighth Amendment claim against a prison transport driver in a case where the driver allegedly operated the transport vehicle recklessly while knowing that injuries to un-seatbelted prisoners had resulted from prior reckless driving of others. The driver in that case knew that his plaintiff prisoner was unbelted, operated the transport vehicle

recklessly, and also told another officer that other prisoners had been similarly injured the prior week and that such accidents "happen [] all the time." *See Rogers*, 709 F.3d at 409.  The Fifth Circuit did not hold that such conduct actually violates the Eighth Amendment, however – the court held merely that the plaintiff's claim was not frivolous and allowed it to proceed. *Id.*  The court stated that it expressed no opinion on the ultimate merits of the plaintiff's claim. *Id.* Likewise, in *Wilbert*, 647 F. Supp. 2d at 769, the district court found that although transport of an inmate without a seatbelt does not violate the Constitution, the added factor of reckless driving "*may* violate the Eighth Amendment."  (Emphasis in original.)

By contrast, however, in *Robledo v. Texas Department of Criminal Justice*, the plaintiff alleged that he was injured while being transported in a prison van, shackled and without seatbelts, when the driver suddenly applied the brakes and sent the plaintiff hurtling into a metal grate inside the van.  The magistrate judge found that the plaintiff failed to plausibly allege that the driver knew of and disregarded a substantial risk to his safety or that the driver operated the van recklessly despite knowing of prior injuries or dangers. *See Robledo v. Tex. Dep't of Crim. Just.*, No. 6:24cv154, 2024 WL 4181140, at *2 (E.D. Tex. July 7, 2024), *adopted*, 2024 WL 3833273 (E.D. Tex. Aug. 15, 2024).  In adopting the magistrate judge's recommendation in *Robledo*, the district court highlighted another case, from outside this circuit, in which a prison transport driver caused a crash.  There, the driver was both talking on a cell phone and looking at another officer's cell phone screen while driving; while distracted, the driver crashed into a stopped vehicle at 35 miles per hour, causing injury to the prisoner plaintiff.  The court found that although a risk of harm can potentially arise when people use cell phones while driving, the prisoner plaintiff in that case plausibly alleged only negligence and not deliberate indifference;

the court dismissed the suit. *See Robledo*, 2024 WL 3833273, at *1 (citing *Hendrix v. Hudson*, No. 20-13200, 2023 WL 3043273, at *1, *4 (E.D. Mich. Apr. 21, 2023)).

### 2. *Jerrell.*

Plaintiffs allege Jerrell's liability based on personal participation in a violation of their rights and deliberate indifference to an excessive risk to their safety. They separately claim that he wrongfully failed to intervene to stop Trevino's allegedly reckless driving. Plaintiffs fail to lodge a viable claim on any of these theories. Additionally, Jerrell is entitled to qualified immunity. The district court should dismiss Plaintiffs' claims against Jerrell.

#### a. *Personal participation and deliberate indifference.*

Plaintiffs' allegation against Jerrell is that, knowing of the other risks to Plaintiffs' safety from Trevino's reckless driving and the bus' lack of seatbelts and Jerrell's TDCJ training, Jerrell nevertheless helped Trevino find the dropped cell phone during the unauthorized stop. This, they say, allowed Trevino to resume using the phone after the stop and that the use of the cell phone led to the crash. *See* Doc. No. 57, pp. 8-10.

Although the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, unwarranted deductions of fact are not entitled to that acceptance. *See Powers*, 951 F.3d at 305. Plaintiffs' allegations here stack multiple inferences atop speculation, stretching their claim beyond plausibility.

To lodge a viable deliberate indifference claim against Jerrell, Plaintiffs needed to plausibly allege either that he personally participated in a violation of their rights or that he was subjectively aware of an excessive risk to Plaintiffs' safety but responded to that risk with deliberate indifference. *See Valentine*, 993 F.3d at 281. In their response to the dismissal motion, Plaintiffs argue both: they claim that Trevino affirmatively exacerbated the danger by

helping Trevino find the dropped phone, and they also argue that his assistance constituted deliberate indifference to the excessive risk.  Neither theory is viable.

The first claim, of personal participation, is too attenuated to be plausible.  Plaintiffs allege that Jerrell helped Trevino find his state-issued cell phone.  *See* Doc. No. 57, p. 8 (Jerrell "affirmatively exacerbated the danger by helping Trevino locate his phone").  They do not claim that Jerrell instructed or counseled Trevino to use the found phone while driving.[11]  Plaintiffs' allegation is not one of personal participation in a constitutional violation, for assisting someone with finding a cell phone is itself not a violation of anyone's rights.  Plaintiff's claim, reduced to its essence, is that Jerrell aided and abetted Trevino's reckless driving by helping him to find the phone that Trevino subsequently decided to use.

Although the United States Court of Appeals for the Fifth Circuit does not appear to have addressed the question squarely, other courts have held that "[t]here is no civil aiding and abetting liability under 42 U.S.C. § 1983."  *Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684, at \*7 (W.D. Mich. Feb. 18, 2010).  The plain text of § 1983 contains no provision for civil aiding and abetting liability: the words "aid" or "abet" do not appear in § 1983.  "Congress knew how to impose aiding and abetting liability when it chose to do so."  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994).  Had Congress intended to create and provide for aiding and abetting liability in § 1983, Congress would have used or included those words.  But it did not, and Plaintiffs cannot rely on a theory of aiding and abetting to ascribe § 1983 liability to Jerrell for "affirmatively exacerbating the danger" by helping Trevino find the dropped phone and thus facilitating Trevino's allegedly reckless

---

[11]  Plaintiffs do not allege that Jerrell had any supervisory authority over Trevino, and so any allegation that Jerrell could have "instructed" Trevino to drive recklessly (or to not do so) would have been speculative in any event.

driving.  *Accord Couch v. Brooks*, No. 4:20-CV-P199-JHM, 2021 WL 261275, at *5 (W.D. Ky.

Jan. 26, 2021); *McDonough v. Toles*, 476 F. Supp. 3d 882, 899 (D. Minn. 2020).[12]

Plaintiffs' other formulation alleges that Jerrell's act of assisting Trevino in finding the

phone amounted to deliberate indifference.  This theory is not viable, either.  Stretching their

theory to its utmost, Plaintiffs could plausibly claim deliberate indifference only by alleging

nonconclusory facts indicating that Jerrell subjectively knew that Trevino would use the cell

phone in such a manner as to drive recklessly and cause serious harm to the inmates, but that

Jerrell helped Trevino find the phone anyway.  Here, Plaintiffs allege only that Jerrell "knew

Defendant Trevino would continue to drive the bus while Trevino operated his cell phone."

(Doc. No. 52, p. 6 ¶ 13.)  This is a conclusory allegation, and it is not entitled to the presumption

of truth: only "well-pleaded" factual allegations are entitled to that presumption.  "This means

that the factual allegations, while not required to be detailed, must amount to more than mere

labels, conclusions, or a state of the legal elements of the claim."  *Hulsey v. Bishop*, No. 1:23-cv-

00069, 2023 WL 9184930, at *5 (N.D. Tex. Dec. 22, 2023) (citing *Iqbal*, 556 U.S. at 678); *see

also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).  Well-pleaded facts are

defined as "plausible, non-conclusory, and non-speculative."  *Dudnikov v. Chalk & Vermilion

Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *see also Iqbal*, 556 U.S. at 681; *Twombly*,

550 U.S. at 551.  The allegations therefore must be more than Plaintiffs' conclusions and

speculation on the issue.  *See Hulsey*, 2023 WL 9184930, at *9.  Here, Plaintiffs' allegation that

Jerrell "knew" Trevino would continue to use the cell phone while driving is nothing more than a

recitation of one element of deliberate indifference.  Plaintiffs offer their speculation about

---

[12]  The Court previously denied Plaintiffs' bid to amend their complaint to allege that Jerrell aided and abetted a §
1983 violation by "encouraging" Trevino to drive recklessly.  (Doc. No. 51, p. 19.)

Jerrell's "knowledge" about what Trevino would do, but they do not allege any facts indicating how Jerrell was actually aware that Trevino would use the cell phone again after the unauthorized stop and thus that an excessive risk of harm existed.

Beyond their recitation of the knowledge element and their speculation about Jerrell's knowledge, Plaintiffs claim only that Jerrell knew that Trevino had used the phone prior to the unauthorized stop. *See* Doc. No. 52, p. 6 ¶ 13. Even affording the presumption of truth to this likely speculative assertion, Plaintiffs' claim still fails. One might perhaps argue that Jerrell *should have known* that Trevino would use the phone again after the unauthorized stop because he had done so before the stop, and thus that an excessive risk of harm existed, but a viable claim of deliberate indifference requires more. Jerrell's liability, according to Plaintiffs, hinges on excessive risk stemming from Trevino's cell phone use while driving; thus, Plaintiffs must plausibly allege that Jerrell *actually knew* (subjective knowledge) that Trevino would use the phone again but helped Trevino find the phone anyway. *See Domino*, 239 F.3d at 755; *see also Farmer*, 511 U.S. at 837. Plaintiffs do not allege such knowledge in any nonconclusory manner, so their claim of deliberate indifference should be dismissed.

Plaintiffs' other arguments against dismissal are not persuasive, either. Any claim that Jerrell violated Plaintiffs' Eighth Amendment rights simply by denying them seatbelts (*see* Doc. No. 52, p. 4 ¶ 9) is easily dispatched. The failure to provide seatbelts to inmates riding in prison vehicles, standing alone, does not violate an inmate's Eighth Amendment rights. *See Rogers*, 709 F.3d at 408-09. Because there was no constitutional requirement that the bus be equipped with seat belts at all, any denial of seat belt use, by itself, likewise does not present a constitutional violation. *Cf. Jimenez v. Travis Cnty. Sheriff's Dept.*, 856 F. App'x 534, 535 (5th Cir. 2021) ("there is no federally protected right to safety restraints in prison transport vehicles");

27 / 41

*Burns v. Davis*, No. 4:15-CV-3280, 2017 WL 4250529, at *3 (S.D. Tex. Sept. 22, 2017) (Bennett, J.). And Plaintiffs acknowledge that the bus was not equipped with seatbelts anyway, so Jerrell could not face liability in his individual capacity for failing to provide them.

Likewise unviable is any claim that Jerrell violated Plaintiffs' rights when he and Trevino allegedly agreed (or, as Plaintiffs put it, "schemed") that Trevino would drive the bus faster in order to make up the lost time consumed by the unauthorized stop. Plaintiffs do not allege that Jerrell and Trevino agreed that Trevino would dart in and out of traffic, or that Trevino would use his cell phone – they only claim that Trevino would drive faster. *See* Doc. No. 52, p. 6 ¶ 14. Jerrell cannot be held vicariously liable for Trevino's recklessness, *see Thompkins*, 828 F.2d at 303-04, so Plaintiffs' factual allegation here fails to raise a viable claim that the supposed scheme called for reckless driving for which Jerrell could be held accountable under the Eighth Amendment.

### b. *Failure to intervene.*

Plaintiffs' bystander liability claim is that Jerrell wrongfully failed to stop Trevino from driving the bus recklessly after the unauthorized stop. They allege that Jerrell, knowing (1) that the prisoners were shackled and were not restrained with seat belts and (2) that Trevino was using his cell phone while driving, acted with deliberate indifference to the inmates' safety by allowing Trevino to drive the bus recklessly in the face of the prisoners' shouted requests for Trevino to slow down and stop talking on the cell phone. *See* Doc. No. 52, p. 14 ¶¶ 26-27.

Plaintiffs cannot base their claim against Jerrell solely on Trevino's conduct, for there is no vicarious liability under § 1983. *See Thompkins*, 828 F.2d at 303-04; *Bailey v. Alviar*, No. 9:15cv164, 2018 WL 1701992, at *5 (E.D. Tex. Feb. 15, 2018) (no vicarious liability of shotgun guard on prison bus where bus driver allegedly caused crash). Thus, to survive Jerrell's

dismissal motion, Plaintiffs needed to plausibly allege that Jerrell (1) knew that Trevino was violating the inmates' constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm, but (4) chose not to act.  *See Joseph*, 981 F.3d at 343.  Plaintiffs were also required to plausibly allege that Jerrell "acquiesced in the alleged constitutional violation."  *Id*. at 323; *Whitley*, 726 F.3d at 647.

Here, Plaintiffs' bystander liability claim is not plausible.  Plaintiffs allege that Jerrell was aware that Trevino was driving recklessly: Jerrell was aboard the bus and thus was experiencing the effects of Trevino's driving, even though he was stationed at the rear of the bus.  Jerrell also allegedly helped Trevino find his dropped cell phone during the unauthorized stop.  But a viable bystander liability claim requires more.  It is not enough for Plaintiffs to allege that Jerrell knew of Trevino's conduct – that Trevino was driving recklessly, or even that Jerrell knew that Trevino was driving recklessly while using his cell phone.  For viability, Plaintiffs were required to allege with particularity that Jerrell knew Trevino's actions were violating Plaintiffs' constitutional rights.  *Cf. Buehler v. City of Austin*, No. 1:17-CV-724, 2018 WL 4225046, at *7 (W.D. Tex. Sept. 5, 2018) (dismissing bystander liability claim where plaintiff failed to plead with particularity that defendant officers, who were present at and observed arrest, knew that excessive force was being used or that the officers had a reasonable opportunity to stop it).  This is because the gravamen of a bystander liability claim is that a law enforcement officer chooses not to act in the presence of a constitutional violation being committed by another officer.  *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  Plaintiffs fail to do so.

Under exceptional circumstances, a defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk, if that official is aware of the facts from which that inference could be drawn.  *See Domino*, 239 F.3d at 755.  To the extent that concept could

be applied to this situation – determining whether Jerrell knew a constitutional violation was occurring – Plaintiffs' contentions still fall short. Such a finding of obviousness is reserved for truly rare circumstances, the "sky high" standard described in *Joseph*. *See* 981 F.3d at 337-38.[13] This case does not present such an obvious situation: Plaintiffs argue that Trevino was violating their constitutional rights by speeding, swerving, and using the cell phone, but their factual contentions simply do not rise to the crystal clarity that would cause any officer to know that a constitutional violation was occurring and that he was obviously required to intervene to stop it.[14]

Plaintiffs also allege that Jerrell had been "taught during TDCJ Correctional Officer Training Academy about inmates' legal rights and the significance the Eighth Amendment plays in his role as a correctional officer." (Doc. No. 52, p. 14 ¶ 27.) Plaintiffs conclude that this instruction "render[ed] his intervention a requirement" and that he was aware that Trevino was violating Plaintiffs' rights with his reckless driving. *Id.* Plaintiffs do not allege that Jerrell had been taught that reckless driving of unbuckled inmate passengers was a violation of those inmates' rights. Plaintiffs' assertion of generalized Eighth Amendment training is too abstract to plausibly allege Jerrell's knowledge that Trevino was violating Plaintiffs' rights on the bus that morning. Merely knowing that prisoners have Eighth Amendment rights is not the same as knowing that someone's particular conduct is violating those rights. Without a plausible allegation that Jerrell knew that a constitutional violation was occurring (as opposed to merely

---

[13] By comparison, the *Joseph* court described cases in which obviousness was found. In one, the Fifth Circuit determined that it was obviously unconstitutional for an officer to shoot a suspect without warning when the suspect was pointing a gun at his own head and did not know that the officer was present. 981 F.3d at 337-38 (citing *Cole*, 935 F.3d at 453).

[14] Should the district court disagree with this conclusion, Jerrell is nonetheless entitled to qualified immunity, as discussed in a moment.

knowing that the conduct itself was occurring), Plaintiffs fail to plausibly allege the first or fourth elements of a bystander liability claim. They therefore also fail to plausibly allege that Jerrell's failure to intervene was the product of a deliberate choice made with knowledge of a constitutional violation.

The district court should dismiss Plaintiffs' failure-to-intervene claim against Jerrell.

### c. *Qualified immunity.*

Even if Plaintiffs' affirmative participation, deliberate indifference, and bystander liability claims did not suffer from the infirmities described here, Jerrell is nonetheless entitled to dismissal of these claims based on qualified immunity.

Plaintiffs bear the burden of demonstrating that qualified immunity is inapplicable. *See Ramirez*, 3 F.4th at 133. To overcome Jerrell's entitlement to qualified immunity at this stage of the litigation, Plaintiffs must plausibly allege that Jerrell violated a constitutional right of theirs and that the right at issue was "clearly established" at the time of Jerrell's alleged misconduct. *Guerra*, 82 F.4th at 285. Plaintiffs resist this, arguing that "a correctional officer's qualified immunity defense should fail if they did not act in their position according to the law, since it is reasonable that a TDCJ officer have knowledge of the law governing their conduct." (Doc. No. 57, p. 13) (citing *Harlow*, 457 U.S. at 818). To the extent Plaintiffs can be understood as arguing that a mere constitutional violation defeats qualified immunity, they are incorrect: Plaintiffs must demonstrate not only that a constitutional violation occurred but also that the violated right was clearly established in law at the time of the alleged violation. *See Guerra*, 82 F.4th at 285.

As discussed above, Plaintiffs' affirmative participation allegation – that Jerrell aided and abetted Trevino's reckless driving by helping him find the dropped phone – does not state a viable § 1983 claim. Jerrell therefore is entitled to qualified immunity because Plaintiffs fail to

plausibly allege a constitutional violation. *See Guerra*, 82 F.4th at 285. Likewise, because Plaintiffs fail to plausibly allege a deliberate indifference claim with regard to Jerrell's assistance in finding the phone, Jerrell is entitled to qualified immunity on that claim as well. *See id.*

Jerrell is also entitled to qualified immunity on the bystander liability claim, because Plaintiffs fail to plausibly allege that Jerrell had a clearly established constitutional duty to intervene. *See Joseph*, 981 F.3d at 345; *Anderson*, 2024 WL 1526730, at *10.[15] Fifth Circuit case law on bystander liability uniformly conditions such liability on a defendant's knowledge that a constitutional violation is occurring. *E.g.*, *Joseph*, 981 F.3d at 343 & n.115 (citing *Whitley*, 726 F.3d at 646) (liability for failure to intervene attaches when, among other things, officer "knew a fellow officer was violating an individual's constitutional rights"). No Fifth Circuit case appears to hold that such liability is possible where a defendant is aware of conduct but is not plausibly alleged to appreciate its constitutional significance. And among district court decisions in this circuit, *Buehler* indicates the opposite – that a lack of knowledge of a constitutional violation merits dismissal of a bystander liability claim. *See Buehler*, 2018 WL 4225046, at *7. This constitutional question is not placed beyond debate, *see al-Kidd*, 563 U.S. at 741, so Jerrell is entitled to qualified immunity.

One district court case suggests that a defendant's knowledge of a constitutional violation can be inferred from other plausible factual allegations. In *Daniels v. Middleton*, Civ. No. 4:23cv6, 2024 WL 898916 (E.D. Tex. Jan. 23, 2024), *adopted*, 2024 WL 897593 (E.D. Tex. Mar. 1, 2024), the court considered a bystander liability claim against a police officer who restrained the plaintiff while another officer put the plaintiff into a chokehold and repeatedly

---

[15] This grants Plaintiffs the assumption, solely for this analysis, that Trevino was violating a clearly established constitutional right by his own conduct. *See id.*

punched him in the face.  There, the court held that the restraining officer knew that the punching officer was using excessive force, and denied the restraining officer's motion to dismiss the bystander liability claim.  *Id*. at *4.  Even if *Daniels* could be interpreted to mean that a defendant need not have subjective knowledge of a constitutional violation in order for a bystander liability claim to proceed, that decision is not controlling on any other court, and it is a single decision – it does not provide the "robust consensus of cases of persuasive authority" by which all reasonable officers would know that their failure to act would violate the Constitution. *See al-Kidd*, 563 U.S. at 741.

Plaintiffs also contend that the right to be free from cruel and unusual punishment is clearly established, and that "nuances of this right, including methods to uphold its protections and actions that would constitute its violation, were provided to all defendants" during TDCJ's training academy for correctional officers.  *Id.*  Qualified immunity analyses, however, are to be conducted at a much lower level of generality than that urged by Plaintiffs.  In determining whether the law is clearly established, courts must undertake the inquiry in light of the specific context of the case.  *See City of Tahlequah, Okla. v. Bond*, 595 U.S. 9, 12 (2021); *Edmiston v. Borrego*, 75 F.4th 551, 559 (5th Cir. 2023).  "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather the inquiry must focus on whether a right is clearly established as to the specific facts of the case."  *Vincent*, 805 F.3d at 547.  Qualified immunity shields officers "unless existing precedent squarely governs the specific facts at issue," such that the question has been placed "beyond debate."  *Laviage v. Fite*, 47 F.4th 402, 408 (5th Cir. 2022) (cleaned up).  Of course the law is clearly established that inmates have the right to be free from cruel and unusual punishment, but that top-level principle does not provide nearly the level of specificity that

33 / 41

would signal to every reasonable officer that his or her conduct was unconstitutional.  Plaintiffs cannot overcome Jerrell's qualified immunity with this too-general principle.

Plaintiffs argue that it is also "clearly established that recklessly driving unbelted and unshackled inmates violates an inmate's Eighth Amendment rights."  (Doc. No. 57, p. 14) (citing *Rogers*, 709 F.3d at 409, *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008), and *Wilbert Quarterman*, 647 F. Supp. 2d at 769).  None of those cases are binding precedent holding that reckless driving in a manner like Trevino violates the Constitution.  The Fifth Circuit in *Rogers* reversed a district court's *sua sponte* dismissal of a reckless driving claim, but did not find that the complained-of conduct violated the Eighth Amendment.  *See* 709 F.3d at 409 (adding: "We, of course, express no opinion on the ultimate merits of Rogers's claim.").  In *Wilbert*, a district court case, an unbuckled prisoner was injured by allegedly reckless driving; the district court denied the defendant's dismissal motion, but left open the question of whether a constitutional violation had occurred.  *See* 647 F. Supp. 2d at 769 (combination of prison transportation without seatbelts and reckless driving "*may* violate the Eighth Amendment") (emphasis in original).  And *Brown*, as an out-of-circuit decision, is persuasive authority only.  In any event, all of these cases involve drivers – people in Trevino's position – not non-drivers like Jerrell (and Kelly and Gonzalez).  Plaintiffs cite no case in which a non-driver was found to be deliberately indifferent in the same or a comparable situation.  The law is therefore not clearly established, because the controlling decision or robust consensus must be with regard to the official's "*particular* conduct," described with specificity.  *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1166

(5th Cir. 2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original)).[16]

Plaintiffs also cite no case in finding that a non-driver violated the Eighth Amendment by failing to intervene to stop another officer's reckless driving: to overcome qualified immunity, Plaintiffs must show not only that there was a clear constitutional violation by Trevino but also that Jerrell had a clearly established duty to intervene – that any reasonable officer would have known that the Constitution required them to intervene.  *See Sligh*, 87 F.4th at 301.  Because Plaintiffs fail to show that every officer in Jerrell's position would know that his or her conduct was unconstitutional, or that every officer in Jerrell's position would know that he or she had a constitutional duty to intervene in the face of Trevino's conduct, Jerrell is entitled to qualified immunity and to dismissal of Plaintiffs' bystander liability claim.

### 3. Kelly.

Plaintiffs allege that Kelly violated their Eighth Amendment rights by calling Trevino while he was driving and by talking with him at the time of the crash.  (Doc. No. 52, pp. 12-13 ¶ 24; *see also id.* at 7 ¶ 15.)  The district court should dismiss this claim.

Plaintiffs allege that Kelly "contribut[ed] towards [Trevino's] already reckless driving" by making and continuing the phone call.  (Doc. No. 52, p. 12 ¶ 24.)  This is an allegation of aiding and abetting Trevino's actions, and the district court should dismiss it for the same reason it should dismiss the claim against Jerrell – there is no civil aiding and abetting liability under § 1983.  *See Theriot*, 2010 WL 623684, at *7; *Couch*, 2021 WL 261275, at *5; *McDonough*, 476

---

[16]  Plaintiffs' unspecific assertion that Jerrell had been generally taught about inmates' Eighth Amendment rights (Doc. No. 57, p. 13) is likewise insufficient to render Trevino's conduct violative of clearly established law or to clearly establish a duty to intervene by Jerrell.  That training (whatever it was) does not establish the law in this or any other area, nor does it determine whether the law is "clearly established" – that is the job of the courts.

F. Supp. 3d 899.  Because Kelly is entitled to dismissal for failure to state a claim, she is also entitled to qualified immunity on this claim, because Plaintiffs have failed to plausibly allege a constitutional violation.  *See Guerra*, 82 F.4th at 285.

To the extent Plaintiffs allege that Kelly's phone call constituted a knowing distraction of Trevino that itself put Plaintiffs in danger, that claim could be plausible.  An Eighth Amendment violation requires that a defendant subjectively know of the risk posed by her conduct and then respond to that risk with deliberate indifference.  In this case, Plaintiffs do not allege that Kelly instructed or counseled Trevino to drive recklessly.  They allege that Kelly was aware that Trevino was "high on cocaine" and "working off little to no sleep," but they do not allege how she knew those things, so those assertions are arguably conclusory.  But Plaintiffs also claim that Kelly knew "almost immediately" upon beginning the phone call that the weather at Trevino's location was poor and heard the inmates' screams, that she knew the bus was not equipped with seatbelts, that she had been trained not to call drivers who were transporting inmates, and – perhaps most importantly – that Kelly and Trevino joked on the phone about the danger they were causing to Plaintiffs.  (Doc. No. 52, p. 12 ¶ 24; *id.* at 7 ¶ 15.)  Kelly's knowledge of these things, Plaintiffs allege, gave her subjective knowledge of the risk to Plaintiffs from her phone call with Trevino.

But it is unnecessary to determine whether this claim against Kelly is plausible, for even if it is, the district court should still dismiss it because Kelly is entitled to qualified immunity. Plaintiffs carry the burden of demonstrating that qualified immunity is not available with respect to Kelly's specific conduct.  *See Ramirez*, 3 F.4th at 133; *Harmon*, 16 F.4th at 1166.  Plaintiffs, however, point to no binding authority, no robust consensus of persuasive authority, and indeed no case at all holding that a non-driver like Kelly has ever been found to be liable for Eighth

Amendment deliberate indifference under these or comparable circumstances.  Their argument against qualified immunity is an assertion that Kelly was "acutely aware" of the facts surrounding Trevino's allegedly reckless driving.  (Doc. No. 57, pp. 13-14.)  Plaintiffs also claim that it is clearly established that recklessly driving unbelted inmates violates an inmate's Eighth Amendment rights.  *See id.* at 14.  But Kelly was not driving, and Plaintiffs do not argue that the law is clearly established with regard to her specific non-driving conduct.  Plaintiffs are required to demonstrate that the law regarding Kelly's particular conduct is clearly established.  They fail to do this, and so the district court should dismiss the claim against Kelly based on qualified immunity.

### 4. *Gonzalez.*

Plaintiffs allege that Gonzalez violated their Eighth Amendment rights by ordering Trevino to drive the bus "with subjective knowledge that Defendant Trevino was working off little to [no] sleep and was high on cocaine."  (Doc. No. 52, p. 13.)  They contend that Gonzalez therefore affirmatively participated in Trevino's alleged violation of Plaintiffs' Eighth Amendment rights.  *See id.*  The district court should dismiss this claim.

A supervisory official may be held liable if he "affirmatively participates in the acts that cause the constitutional deprivation."  *See Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) (citing *Porter*, 659 F.3d at 446).  By analogy, a "superior officer who issues a direct order to a subordinate to use excessive force" demonstrates the necessary personal participation.  *See Peña v. City of Rio Grande City*, 879 F.3d 613, 620-21 (5th Cir. 2018); *cf. Wilson v. City of Mission, Tex.*, No. 7:18-cv-00399, 2020 WL 2079359, at *8 (S.D. Tex. Apr. 29, 2020) (Alvarez, J.) (supervisor's order was sufficient to link supervisor to subordinate's alleged misconduct).

In this case, Plaintiffs' claim against Gonzalez is too attenuated to be viable. They do not allege that Gonzalez ordered Trevino to drive the bus recklessly: they do not allege that Gonzalez ordered Trevino to speed, to swerve in and out of traffic, or to use his cell phone while driving. At most, Plaintiffs allege that Gonzalez ordered Trevino to drive even though Trevino had expressed concern that he lacked sufficient rest and when Gonzalez allegedly knew that Trevino was high on cocaine.[17] Plaintiffs fail to plausibly allege a sufficient connection between Gonzalez's alleged order to drive the bus and Trevino's subsequent reckless driving – that by giving the order to drive, Gonzalez knew that Trevino would drive so recklessly as to violate Plaintiffs' Eighth Amendment rights. *Cf. Smith v. LePage*, 834 F.3d 1285, 1298 (11th Cir. 2016) (requirement "quite rigorous" – plaintiff must allege that supervisor directed subordinate to act unlawfully or knew subordinate would act unlawfully and failed to stop subordinate from doing so). The district court should therefore dismiss Plaintiffs' affirmative-participation allegation against Gonzalez for failure to state a claim upon which relief may be granted.

The Court previously denied Plaintiffs leave to amend their complaint to allege a supervisory liability claim against Gonzalez, because such a claim would be futile. (Doc. No. 51, pp. 28-29, 30.) Nevertheless, Plaintiffs have attempted to allege a supervisory liability claim in their Fourth Amended Complaint. They assert that Gonzalez implemented a policy of not allowing drivers to take sufficient time off to rest and that he failed to enforce TDCJ policies against cell phone use while driving, driving while fatigued, speeding during inmate transport,

---

[17] Plaintiffs' cocaine allegation is conclusory, as is their allegation that Trevino's drug habit was "well-known." They do not explain how Gonzalez knew that Trevino was high on cocaine when he ordered Trevino to drive the bus.

and drug use.  (Doc. No. 52, pp. 13-14 ¶ 27.)  The district court should either strike or dismiss this claim because Plaintiffs did not have leave to raise it.

In any case, Plaintiffs' attempted supervisory liability claim is not viable.  Absent personal participation, Gonzalez can be held liable only if he implements an unconstitutional policy that causally results in the constitutional injury.  *See Porter*, 659 F.3d at 446.  Such a policy must be "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation."  *Thompkins*, 828 F.2d at 304 (cleaned up).

Plaintiffs claim that Gonzalez implemented one unconstitutional policy himself: not allowing drivers to take time off for sufficient rest.  (Doc. No. 52, p. 13 ¶ 25.)  They also allege that Gonzalez routinely failed to enforce TDCJ policies, resulting in an "unconstitutional system that was the catalyst" for Trevino's actions and caused the crash.  *Id.* at 13-14 ¶ 25.  Plaintiffs' allegation of an unwritten Gonzalez-implemented policy is both conclusory and speculative, because they do not allege any examples of that policy other than this one case.  Plaintiffs insist that Gonzalez's actions in this regard were "reoccurring" and "ubiquitous," *id.* at 13 ¶ 25, but they fail to specify even one other instance when Gonzalez failed to allow Trevino or anyone else to take sufficient time off for rest.  Similarly, Plaintiffs do not cite a single instance in which Gonzalez failed to enforce TDCJ policies with regard to Trevino or any other subordinate. Because Plaintiffs fail to cite any examples of a pattern of conduct instead of a single discrete incident, their allegation of Gonzalez-created "policies" is conclusory and speculative and cannot be accepted as true.  *See Ferrer*, 484 F.3d at 780.  The district court should therefore dismiss Plaintiffs' supervisory liability claim against Gonzalez.

Because Plaintiffs fail to allege viable constitutional claims against Gonzalez, he is also entitled to qualified immunity on those claims.  *See Guerra*, 82 F.4th at 285.  Additionally,

Plaintiffs fail to cite any cases holding a supervisor liable under the Eighth Amendment for ordering an employee to drive despite knowledge of the employee's fatigue or drug use. Their argument against qualified immunity is limited to a claim that the law is clearly established that recklessly driving unbelted prisoners violates those prisoners' Eighth Amendment rights. But as with Kelly, Gonzalez was not driving, and Plaintiffs fail to cite any case or even argue that the law is clearly established with regard to Gonzalez's particular conduct. The district court should therefore dismiss Plaintiffs' claims against Gonzalez based on qualified immunity as well.

### F. Conclusion and recommendation.

The district court should GRANT the Rule 12(b)(6) motion (Doc. No. 54) and DISMISS Plaintiffs' claims against Jerrell, Kelly, and Gonzalez with prejudice.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District

Court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on November 12, 2024.

MITCHEL NEUROCK
United States Magistrate Judge